[Filed February 8, 1886.]

## PIERCE MAYS, ASSIGNEE, *v.* J. R. FOSTER AND D. ROBERTSON.

CORPORATION—CONTRACTS BETWEEN STOCKHOLDERS.—The directors of a corporation who owned all its stock, at a meeting where all were present, but not holding a corporate meeting as such, entered into an agreement whereby three of them transferred to the remaining two all the stock of the corporation not already held by the latter: such transaction was purely an individual matter between the parties, and in no way affected by the fact that the parties were stockholders or directors of the corporation.

SAME.—Unless there are particular circumstances to stamp it as such, the
fact that a stockholder in a company transfers his stock to an individual
cannot be construed as a transfer for the benefit of the company.

WASCO COUNTY.    Defendants appeal.    Affirmed.

*R. Williams* and *James K. Kelly*, for Appellants.

It is unnecessary to the validity of a contract on the
part of a corporation that it should be made by a formal
vote of the members, or that it should be entered in the
minutes of any meeting.    But that inference may be
drawn from corporate acts tending to prove a contract
or promise, as well as in the case of an individual, and a
vote is not always necessary to establish such contract or
promises.    (*Bridge* v. *Gordon*, 1 Pick. 297; *President etc.*
v. *Danbridge*, 12 Wheat. 64; *Bank of Columbia* v. *Patter-
son's Adm'rs*, 7 Cranch, 299; *Scott* v. *Middletown etc. R. R.
Co.*, 86 N. Y. 200; *Episcopal Charitable Society* v. *Episco-
pal Church*, 1 Pick. 372.)    It is usual that a record of
the proceedings of the board of directors should be made
by a clerk or secretary, but "such provisions are in com-
mon merely directory, and a breach of them . . . . by
no means affects the validity of the unrecorded acts."
(Angell & Ames on Corporations, sec. 291 a; Brice's
Ultra Vires, 522, note b.)

*F. P. Mays*, for Respondent.

LORD, J.    The complaint filed by the plaintiff alleges,
in substance, the incorporation of the Rockville etc.
Trading Company; the copartnership of the defendants;
the assignment by said corporation, on January, 1881, of
all its property, including the claim sued on, to the
plaintiff; the delivery by said corporation to the defend-
ants of 21,127 pounds of wool to be sold on commission;
the sale of said wool for $4,615.46, prior to December 15,
1880, by defendants; that the commissions, etc., all

proper charges of defendants against said wool were $3,285.50; that the balance, $1,329.96, had never been paid; and that said corporation had demanded said balance, but defendants refused, and still refuse to pay the same. The answer of the defendants admits the incorporation of plaintiff's assignor, and the copartnership of defendants, but denies the assignment of said corporation to the plaintiff; denies that said corporation delivered to the defendants 21,127 pounds of wool, or any other or greater amount than 13,531 pounds; and alleges that they received 7,596 pounds of wool, being the balance from one T. S. Lang; sets up certain charges against the wool; and denies any indebtedness to the plaintiff. And as a separate defense, it is alleged that after the wool was received, said Lang, who is indebted to the defendant, John R. Foster, in the sum of $1,271.93, agreed with the defendants that they might retain from the proceeds of said wool the amount of his indebtedness to said Foster, and that this agreement was known to the corporation; and further alleges that prior to the sale of said wool, and while it was in the defendants' possession, said Lang and his wife transferred their stock in said corporation to said corporation, in consideration of which said corporation agreed with said Lang to pay to the defendants out of the proceeds of said wool the amount of Lang's debt to the defendant Foster; that after the sale the defendants did pay to the defendant Foster, with the consent of said corporation, the said sum of $1,271.93, and only accounted to said corporation for the balance of the proceeds of said wool. The reply denied the new matter and the agreement set up in the answer. After the plaintiff had introduced some testimony, the following stipulation was made by the respective parties, in open court:

"That the wool alleged to have been shipped and deliv-

ered (part to John R. Foster and part to Foster & Robertson) was received by them, and that Foster & Robertson accounted for all the wool; but in doing so, and in rendering account of sales, they included therein as a charge against said company the note of T. S. Lang in favor of John Foster for $1,271.93, which the defendants claim they had the right to do under an agreement with the company, but the plaintiff denies that any such agreement was made with the company."

By the terms of this stipulation, there was left for trial but one question : Whether the defendants had the right to deduct from the proceeds of sales in their hands the amount of the note given by Lang to Foster. The jury found for the plaintiff.

The grounds of error alleged are in respect to certain instructions given at the request of the plaintiff, and in refusing to give certain others asked by the defendants. As all these instructions were based upon the supposed effect of certain evidence, it is necessary to give the substance of it to understand the point, or at least the main point, of contention. The stockholders of the corporation were T. S. Lang, Mary Lang, his wife, James A. Varney, John R. Poor, and Charles E. Poor. The capital stock was $25,000, divided into 250 shares of $100 each. Of these T. S. Lang had 1 share; his wife 49 shares; Varney 50 shares; and John R. Poor and his son Charles 150 shares. All the stockholders were directors of the company at that time, and Lang was president of the board of directors, and Varney the secretary. It appears by the record that some time in November, 1880, John R. Poor met T. S. Lang in the Dalles, and had a conversation with him at the Umatilla House about selling their stock in the corporation; and after a good deal of negotiation arrived at an understanding, subject to the approval of the other parties concerned, whereby the

stock of the Langs, and it would seem also of Varney, was to be transferred to Sarah E. Poor, and in consideration thereof Poor was to procure the release of Lang from all his indebtedness to the company, and also to pay Foster the debt above referred to out of the proceeds of the wool in the hands of Foster & Robertson, the defendants. In pursuance of this understanding, the parties all met at the house of Mr. Lang. All the directors of the company were present, but not holding a meeting as such, and the matter of the Langs selling out their stock was talked over ; and the interview resulted in all present giving their consent to the agreement between Lang and Poor, which a day or two afterwards was carried into effect by an assignment of the stock to Sarah E. Poor. It is not claimed that the corporation acted in its corporate capacity in respect to this matter, nor that it received the stock, or any benefit resulting from it, unless John R. Poor be considered the corporation from the fact of owning the controlling interest in the corporation.

The plaintiff contended that the transaction was purely an individual matter between the parties, and in no way involving a corporate act, and in which the corporation was in no way concerned ; and that its character as an individual transaction was not affected by the fact that some or all of the parties concerned were stockholders or directors of the corporation ; nor by the further fact that the transaction on one side was to secure the transfer of stock by one individual to another individual. Upon this theory of the transaction, as it is disclosed by the evidence, the plaintiff based his instructions, which were given by the court and excepted to, and which, in our judgment, apply the correct principles of the law to the case, and require no further consideration, unless the instruction asked for by the defendants and refused

by the court was error. This instruction sufficiently specifies the contention of the defendants, and is as follows :

"If T. S. Lang and his wife transferred the stock held by them in the Rockville Wool Stock-raising and Trading Company to Sarah E. Poor, and said company, at a meeting of its board of directors, by resolution accepted such transfer for the benefit of said company, then they are chargeable with a knowledge of the contract under which said transfer was made, and the corporation could not keep the stock so received and refuse to perform the contract by which it procured the transfer to be made."

Now, if T. S. Lang and his wife had transferred the stock held by them to the company, that might raise the question whether the company was authorized to assume the liability ; and if they were, which may be conceded, the ratification would be good. More, if Lang and his wife transferred to Sarah E. Poor for the benefit of the company, and the company accepted such transfer, then it may be said that the company is chargeable with a knowledge of the contract, etc. But there is no resolution of the company to this effect. The only resolution in the record having reference to this matter recites the fact that Lang and his wife sold their stock in the company to *Sarah E. Poor*, and the further fact that "having no means to pay the debt against T. S. Lang," etc., it is "hereby canceled." But there is nothing in this which suggests that Sarah E. Poor took the transfer "for the benefit of the company," or any evidence that the corporation "accepted" a transfer of stock which had been made, not to it, but to Sarah E. Poor, who thereby became a stockholder. Nor is there anything to show that the company claimed, professed to own, or kept the stock. The facts show the stock did not belong to it, and there is nothing in the record inconsistent with this.

Unless there are particular circumstances to stamp it as such, the fact that a stockholder in a company transfers his stock to an individual cannot be construed as a transfer for the benefit of· the company. It is simply an individual act between the parties. The company derives no benefit from it. It is a private transaction, and whatever knowledge the company may have respecting it, it neither creates nor discharges any liability. We are unable to discover any error except the assign-ment in relation to the amount of the judgment and rate of interest, which it is admitted was a mistake, and of which the defendants were notified by the plaintiff; and for the amount thus modified the judgment is af-firmed.