SANBORN–CUTTING CO. v. PAINE.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1917.)

No. 2898.

1. BANKRUPTCY ⬥═245—TRUSTEE'S SUIT FOR CREDITORS.
   A corporation having been adjudged a bankrupt under Bankr. Act July 1, 1898, c. 541, 30 Stat. 544, as amended by Act June 25, 1910, c. 412, 36 Stat. 838, the trustee could act for all the creditors in asserting their rights to liens on property coming into his custody by legal or equitable proceedings.

2. BANKRUPTCY ⬥═303(3)—ACTION BY TRUSTEE—SUFFICIENCY OF EVIDENCE.
   In suit by a trading company's trustee in bankruptcy for an accounting and restitution of assets, etc., evidence held to show that, when the president of a packing company assigned to the officer of defendant company

shares of stock in the packing company and a debt owing the trading company by the packing company for merchandise, the trading company was insolvent, and that the assignor and assignees had ample reason so to believe.

3. CORPORATIONS ⟨⟩542(1.)—FRAUDULENT CONVEYANCES—QUESTION INVOLVED.

Where creditors of an insolvent corporation or those representing creditors assail transfers and agreements as prejudicial to their rights, the question is not whether the various transfers and agreements are to be upheld merely as between the parties to them, but whether the law will avail complaining creditors of the insolvent corporation to obtain possession of the property transferred as subject to corporate debts.

4. CORPORATIONS ⟨⟩182—POWER OF MAJORITY STOCKHOLDER—CONVEYING PROPERTY.

The president of a corporation who owned all but two of its 25,000 shares of stock could not wholly ignore the fact that there was a corporate existence not to be disregarded at his will, as an individual stockholder, by independent attempt to convey the property of the corporation.

5. CORPORATIONS ⟨⟩542(1.)—CONVEYANCE BY CORPORATION—FRAUD.

Where an insolvent packing company transferred all of its property to another company, the only consideration moving to the packing company being payment by the transferee company of part of the packing company's debts, nearly all of which were due two individuals who at the same time were stockholders and directors in the packing company and also in the transferee company, the transfer from the packing company being made with the knowledge and intention on the part of the directors that the packing company should cease business after the transfer, such transfer cannot operate to defeat the claims of the packing company's creditors.

6. CORPORATIONS ⟨⟩182—ACT OF MAJORITY STOCKHOLDER—WAIVER.

A trading company did not waive its claim upon the assets of a packing company, debtor to it, through the acts of the majority stockholder in the trading company; as he was not the corporation, and could not use its assets for his own benefit or deprive its creditors of their claims upon the assets.

7. BANKRUPTCY ⟨⟩185—ESTOPPEL OF TRUSTEE—ACT OF MAJORITY STOCKHOLDER—BINDING FORCE.

The trustee in bankruptcy of a trading company was not estopped from pursuing a claim for restitution of assets against the assignee of a packing company, the trading company's debtor, on the theory that the trading company and its creditors became bound by any agreement between the majority stockholder in the trading company and the assignee company that the trading company would not enforce its claim against the packing company's assets; the trading company, and not its majority stockholder, having been the creditor.

8. BANKRUPTCY ⟨⟩306—APPEAL—LAW OF CASE.

Where a trustee in bankruptcy took no appeal from a decree of the District Court, the Circuit Court of Appeals may not consider a point made in his brief that the District Court erred in not making an allowance.

Appeal from the District Court of the United States for the District of Oregon; Robert S. Bean, Judge.

Suits in equity by V. A. Paine, as trustee of the Kake Trading & Packing Company, a corporation, against the Sanborn-Cutting Company, a corporation, and others. From a decree for plaintiff, as trustee, against the Sanborn-Cutting Company, the latter appeals. Affirmed.

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

G. C. & A. C. Fulton, of Astoria, Or., for appellant.

Gunnison & Robertson, of Juneau, Alaska, and James J. Crossley, of Portland, Or., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. In December, 1915, the appellee, Paine, as trustee of the Kake Trading & Packing Company (to be called Trading Company), a corporation voluntarily adjudged a bankrupt on April 9, 1915, brought suit in the United States Court in Oregon against Kendall, Gordon, Sanborn, Kake Packing Company, and Sanborn-Cutting Company for an accounting by the Sanborn-Cutting Company of its conduct of the business of the Kake Packing Company, a corporation (to be called the Packing Company), since May, 1914, for restitution of the assets of the Packing Company, and for an account of 125 shares of stock of the Packing Company belonging to the Trading Company, and for judgment against Kendall, Gordon, and Sanborn-Cutting Company and each of them for $12,500, and for other relief. On the same day Paine, as trustee, brought suit in Alaska against the Kake Packing Company and appellant herein, Sanborn-Cutting Company. In the Alaska case the trustee prayed that the conveyance of the assets be held void, and that the Cutting Company account and make restitution to the Packing Company, or that, if restitution could not be had, the property be held by the Cutting Company subject to the debts of the Packing Company to be disposed of to pay the unpaid debts of the Packing Company, including a judgment theretofore recovered by the trustee against the Packing Company, or that the Cutting Company be required to pay the unpaid debts of the Packing Company, including the judgment recovered by the trustee and for judgment against the Cutting Company for $10,823.14, with interest, and for further relief. By stipulation the Alaska and Oregon suits were consolidated and tried on the merits before the United States District Court in Oregon. Decree was awarded Paine, as trustee, and against this appellant, Sanborn-Cutting Company, for $6,687.87, with interest, without costs to either party. Order of dismissal was made as to Sanborn, Kendall, and Gordon. Sanborn-Cutting Company appeals.

The Oregon suit is brought by the trustee of the Trading Company, bankrupt, for and on behalf of the trustee and all stockholders of the Packing Company similarly situated who may wish to join and for the benefit of the Packing Company. The substance of the complaint is that the Trading Company on April 9, 1915, doing business in Alaska, was not able to pay the just claims of its creditors; that the Kake Packing Company and the Sanborn-Cutting Company were Oregon corporations doing business in Alaska; that one Ernest Kirberger was president, manager, and trustee of the Trading Company, bankrupt, and owner of the majority of stock thereof; that the corporation owned property valuable for use in the salmon industry, and about February, 1912, together with Sanborn and Gordon, Kirberger organized the Kake Packing Company to pack fish and food products in Oregon and Alaska; that the Packing Company had a capital stock

of $50,000 divided into 500 shares of $100 par value each, Kendall and Sanborn each having 85 shares, Gordon 60 shares, Frank Sanborn, son of G. W. Sanborn, 10 shares, G. C. Fulton and G. W. Sanborn, 20 shares, and A. C. Kirberger, brother of Ernest, heretofore mentioned, 60 shares; that when the Packing Company was organized, Sanborn, Gordon, and Kendall knew of the fact that when the Packing Company was organized it was agreed between Gordon, Sanborn, and Kendall and Ernest Kirberger that Kirberger would buy 85 shares of stock therein by causing the Trading Company to sell and convey to the Packing Company all its property; that thereafter the Trading Company conveyed its property to the Packing Company, and the Packing Company paid to the Trading Company $8,500, which sum the Trading Company, through Kirberger, then immediately paid back to the Packing Company in consideration of 85 shares of stock in the Packing Company. The trustee contends that these 85 shares were purchased with the assets of the Trading Company and became the property of the Trading Company, bankrupt, and were delivered to Kirberger in trust for the Trading Company.

It is also alleged that thereafter the Packing Company owed the Trading Company $4,000 arising out of transactions between the two corporations, but that in furtherance of the scheme agreed upon between Sanborn, Gordon, and Kendall and Kirberger the Packing Company paid the $4,000 to Kirberger, who in turn at once paid the money back to the Packing Company and received 40 additional shares of stock in the Packing Company.

The trustee alleges that this transaction was made without any authority on Kirberger's part; that the 40 shares became the property of the Trading Company and rightfully belonged to the trustee.

It is charged that about January, 1914, Kendall and Sanborn, with a view to defraud the Trading Company and its creditors of 125 shares of stock in the Packing Company and to defraud the creditors of the Trading Company, conspired to obtain 125 shares of stock from Ernest Kirberger, in whose name the stock then stood, and that they induced Kirberger to transfer to Kendall and Sanborn the 125 shares in the Packing Company owned by the Trading Company for $1, a grossly inadequate consideration; that Sanborn, Kendall and Kirberger then well knew that such assignment would unlawfully defraud the Trading Company and its creditors and delay them in collecting their demands, the Trading Company then being known to be insolvent. It is charged that to carry out the scheme Sanborn and Kendall caused a meeting of the stockholders of the Packing Company to be held about May 11, 1914; that Sanborn and Gordon constituted a majority of the directors of the Packing Company, and in connection with Kendall and Frank Sanborn and Fulton, in violation of the rights of the minority stockholders and of the Trading Company, and in connection with Kendall, caused all the assets of the Packing Company to be sold and conveyed to the Sanborn-Cutting Company, appellant herein; that Sanborn and Kendall constituted a majority of the board of directors of the Sanborn-Cutting Company purchasing company; that the sale operated as a fraud against the Trading Company; that Kirberger

had no authority to assent to the sale; and that Kendall and Sanborn had no right to vote 125 shares referred to in the Trading Company in behalf of the corporation. It is alleged that Sanborn and Kendall held on to the 125 shares in the Packing Company stock, and that the Packing Company was obliged to discontinue business in Alaska, and the Sanborn-Cutting Company unlawfully now holds the property of the Packing Company, and has made profits without accounting therefor to the Trading Company or to the Packing Company; that the Packing Company while under the influences of Sanborn and Kendall will not proceed to have the conveyance and sale set aside; and that a demand on Kendall and Sanborn, as directors of the Packing Company, would be useless.

Sanborn-Cutting Company denied all allegations of fraud, admitted the transfer to it of the assets of the Packing Company, but said that the transfer was for a valuable consideration; that the sale was made at the request of Kirberger, who voted the stock in his name; and that, after the assignment of the assets to the Sanborn-Cutting Company in May, 1914, the latter company took possession of the property, and has no ownership in 125 shares of the Packing Company. By replication the trustee denied all affirmative allegations, and pleaded that the assignment was invalid and wrongful. In the Alaska suit the trustee sued for himself as trustee and other creditors of the Packing Company similarly situated. He pleaded that in August, 1915, in Alaska, as trustee, he recovered judgment against the Packing Company for $10,333.31, with interest; that execution upon the judgment was returned unsatisfied; that about May 12, 1914, the Packing Company, then controlled by the Sanborn-Cutting Company, with intent to defraud the creditors of the Packing Company, and particularly the Trading Company, by bill of sale conveyed all its assets in Alaska to the Sanborn-Cutting Company; that such transfer was not in good faith, but made with notice and in pursuit of a conspiracy to defraud the Trading Company out of its debt against the Packing Company; that the Packing Company was controlled by the Sanborn-Cutting Company, and that the property conveyed should be held subject to the payment of the debts of the Packing Company; that there are many unpaid creditors of the Trading Company, bankrupt; and that they have been delayed and hindered in the collection of their debts by reason of the transfer. The Sanborn-Cutting Company denied all fraud and pleaded purchase in good faith, and that the consideration for the purchase was that it should pay the debts of the Packing Company, excepting a claim of the Trading Company amounting to $8,582.21, and that such an arrangement was agreed to by the Trading Company, which corporation had assigned its claim to Sanborn and Kendall; that the property transferred to the Sanborn-Cutting Company was not worth more than $60,000, but that the latter company agreed to take the property and pay all the debts which were represented at the time to be $76,621.01, exclusive of the claim of the Trading Company; and that the Trading Company induced the Sanborn-Cutting Company to take all the assets of the Packing Company, the main inducement being cancellation of the claim of the Trading

Company against the Packing Company or the assignment thereof to Sanborn and Cutting, who agreed to satisfy the claim, and subsequently did. It is set up that possession was taken; that the judgment obtained in Alaska was fraudulent and void, in that it was based on the claim of the Trading Company which had theretofore been assigned to Sanborn and Kendall, and hence did not pass by the proceedings in bankruptcy; that Kirberger was the owner of all of the stock of the Trading Company, and had full power and authority to transfer the account referred to.

[1] We can at once dispose of the contention that the trustee is not able to maintain this suit by saying that, the corporation having been adjudged a bankrupt under the Bankruptcy Act of 1898, amended June 25, 1910, the trustee could act for all the creditors in asserting their rights to liens upon property coming into his custody by legal or equitable proceedings. Such is the rule of Pacific State Bank v. Coats, 205 Fed. 618, 123 C. C. A. 634, Ann. Cas. 1913E, 846, followed in Cooper Grocery Co. v. Park, 218 Fed. 42, 134 C. C. A. 64, and In re Lane Lumber Co., 217 Fed. 550, 133 C. C. A. 402. It is also very clear from the record of the appraisement of the Trading Company and the claims filed that in March, 1916, the assets on hand were insufficient to pay the claims.

In the quite voluminous record these matters are specially important. At the time of the transactions under investigation Ernest Kirberger owned 24,998 shares out of 25,000 shares of the Trading Company, and was president, manager and trustee thereof. When the Packing Company was organized by Kendall, Sanborn, and Kirberger on February 19, 1912, with a capital of $50,000 divided into 500 shares of the par value of $100 each, Sanborn and Kendall each subscribed for 85 shares, F. H. Sanborn, son of G. W. Sanborn, subscribed for 10 shares, and Ernest Kirberger for 125 shares, and A. C. Kirberger for 60 shares. Kirberger was president and manager. E. Kirberger testified that property which the Trading Company by resolution of February 29, 1912, authorized him by bill of sale to convey to the Packing Company to the amount of $7,500 represented purchase of 85 shares in the Packing Company, and that he intended to buy 40 shares for himself and to pay for them in cash, but he explained that the total 125 shares standing in the name of Ernest Kirberger were all paid for with the assets of the Trading Company, and the lower court so found. The property transferred was personalty and realty. No authority was given by the Trading Company to Kirberger to purchase the additional 40 shares for which he subscribed. Kirberger expected to get some money from his sister and to pay for these 40 shares in that way, but this plan was not carried out. He testified that the Packing Company owed the Trading Company $4,000 for merchandise, and to pay this $4,000 the Packing Company sent its check, and he (Kirberger) in turn indorsed the check back to the Packing Company in payment of the 40 shares just referred to. Gordon and Sanborn knew that this account of the Trading Company was used by Kirberger to buy the 40 shares of stock, and Kirberger testifies that in 1912 and 1913 he operated under direct instructions of Kendall and Sanborn.

[2] In the Sanborn-Cutting Company in 1914 Kendall and Sanborn were the sole owners, Sanborn being president and general manager, and the two being really the representatives of the corporation. It was in January, 1914, that Kirberger made two assignments to Kendall and Sanborn, one covering 125 shares of stock in the Packing Company, that being the same stock which had been purchased with the assets of the Trading Company; the other being a debt owing to the Trading Company by the Packing Company for merchandise amounting to $8,582.21. We think it clear from the evidence that when these two assignments were made the Trading Company was insolvent, and that the Trading Company and Ernest Kirberger and Kendall and Sanborn had ample reason to believe that the Trading Company was an insolvent corporation. It had been sued by a creditor, and its operations had not been successful. There was no consideration for the assignment of the stock in the Packing Company or for the debt owing to the Trading Company by the Packing Company for merchandise, except $2, $1 for each assignment. It appears, however, that on January 6, 1914, when Kirberger, in consideration of $1, transferred to Kendall and Sanborn all his interest to the 125 shares of the stock of the Packing Company then standing in his name on the books of the corporation, he also agreed to deliver to Kendall and Sanborn within 30 days from the date of such agreement 60 shares of stock in the corporation standing in the name of A. C. Kirberger, his brother, all subject to certain conditions, namely, that the transfer was to secure cash advances made in 1912 and 1913 by Kendall and Sanborn on account of the Kirbergers in matters connected with the conduct of the Packing Company. This agreement referred to also provided that, as Ernest and A. C. Kirberger desired to reimburse Kendall and Sanborn and to purchase and secure additional stock in the Packing Company, the two Kirbergers were to pay Kendall and Sanborn on or before February 15, 1914, $65,000 in cash or securities, and upon such payment Kendall and Sanborn were to transfer to Ernest Kirberger the 125 shares in the name of Ernest Kirberger and 60 shares in the name of A. C. Kirberger, and also 125 shares in the Packing Company then standing in the name of Kendall and Sanborn, but that in the event of default by the Kirbergers all the right of their stock in the Kake Packing Company should cease and become the property of Kendall and Sanborn. Neither this assignment nor the assignment of the account of the Trading Company against the Packing Company was ever authorized or ratified by the Trading Company corporation, and at a stockholders' meeting and a subsequent meeting of the board of directors held on March 17, 1915, both transfers were formally disapproved.

On May 11, 1914, after some preliminary talks the Kake Packing Company stockholders had a meeting to consider the transfer of all its property to the Sanborn-Cutting Company, and the Packing Company made a bill of sale of its entire assets to the Sanborn-Cutting Company for a recited consideration of $72,621.01. No money changed hands in this transaction, the transfer being represented by book entries. The resolution of sale named the sum of $72,621.01 liabilities

of the Packing Company, the Sanborn-Cutting Company agreeing to assume and pay all of such liabilities, and it appears that the Packing Company between the time of the sale, May 11, 1914, and the fall of 1914, during which time it earned profits, did largely from profits and earnings pay off a large part of the liabilities of the Packing Company. The Packing Company ceased doing business after the transaction with the Sanborn-Cutting Company, and in doing so followed previously made plans. But there was still the outstanding claim of $8,585.21 owing by the Packing Company to the Trading Company. The record discloses that nearly the whole of the liabilities assumed by the Sanborn-Cutting Company were either personal claims of Kendall, Sanborn, Sanborn & Son, or the Sanborn-Cutting Company, or were liabilities which had been secured or indorsed by them or some of them. It also appears that upon May 11, 1914, Kirberger and the Trading Company and the Packing Company made a deed to the Sanborn-Cutting Company for a consideration of $10 for a tract of land near Kake, Alaska.

[3, 4] We accept the finding of the District Court that the transactions had between the corporations and persons above mentioned were all without actual or willful intent to perpetrate any wrong. Here, as in many other instances where creditors or those representing creditors assail such transactions as prejudicial to their rights, the question is not whether the various transfers and agreements are to be upheld merely as between those who are the parties to them, but whether the law will avail complaining creditors of the insolvent corporation to obtain possession of the property transferred as properly subject to the payment of corporate debts. The assignments of January 6, 1914, made by Kirberger were not the acts of the Trading Company. The corporation received no consideration for either of them; no corporate act was ever had which authorized Kirberger to make them, and no ratification or acquiescence of or in them was made by the Trading Company as a corporation. Kendall and Sanborn well knew that there was no corporate authorization in Kirberger to make them. They knew that Kirberger owned all but two shares of the Trading Company stock, and though they dealt with him as the sole acting representative of the company, and though they believed that anything he might do in the name of the corporation with respect to its affairs would be of binding force, still as against creditors of the corporation Kirberger could not wholly ignore the fact that there was a corporate existence not to be disregarded at the will of himself, an individual stockholder, by independent attempt to convey the property of the corporation.

In Cook on Corporations the author cites many cases sustaining his text to the effect that a single stockholder cannot make a contract for and in the name of the corporation which shall have any binding force or validity except by subsequent ratification or adoption by the corporation in the regular manner, and, further, that although one person owns a majority of the stock or all of it, or all but two shares, he does not in consequence thereof acquire the right to act for the corporation or as the corporation independently of the directors. Cook on Cor-

porations (6th Ed.) pp. 2225, 2226. In Mays, Assignee, v. Foster et al., 13 Or. 214, 10 Pac. 17, it was held that, except under particular circumstances, the fact that a stockholder in a company transfers his stock to an individual cannot be construed as a transfer for the benefit of the company; it is simply an individual.act between the parties, and although the company may have knowledge respecting it, such a transfer neither creates nor discharges any liability. In re Haas Co., 131 Fed. 232, 65 C. C. A. 218.

[5] Turning now to the transfer by the Packing Company of all of its property to the Sanborn-Cutting Company, appellant herein, we find that the only consideration moving to the Packing Company was payment by the Sanborn-Cutting Company of a part of the debts of the Packing Company. We must keep in mind that nearly all of these debts were due to Sanborn and to Kendall as individuals, or were for debts for which Sanborn and Kendall had become liable as indorsers. Thus the effect was that Sanborn and Kendall, being at the time stockholders and directors in the Packing Company, insolvent, selling corporation, and in the Sanborn-Cutting Company, buying corporation, attempted to gain preferences in favor of themselves over other creditors of the Packing Company and to the prejudice of such other creditors. Under such a situation the transfer from the insolvent selling corporation, being made with the knowledge and intention on the part of the directors that it shall cease business after the transfer has been made, cannot operate to defeat the claims of corporation creditors. In Sutton Manufacturing Co. v. Hutchinson, 63 Fed. 496, 11 C. C. A. 320, Justice Harlan sitting with the Court of Appeals of the Seventh Circuit drew a distinction between the powers of solvent and insolvent corporations with respect to the disposition and transfer of their estates. He said for the court:

"It is quite true that the property of a private corporation is not charged by law with any direct trust or specific lien ·in favor of general creditors; and such a corporation, so long as it is in the active exercise of its functions, may, if not restrained by its charter or by statute, exercise as full dominion and .control over its 'property, having due regard to the objects of its creation, as an individual may exercise over his property. 'But when it becomes insolvent, and has no purpose of continuing business, the power to sell, dispose of, and transfer its estate is not altogether without limitation. * * * It is, we think. the result of the cases that when a private corporation is dissolved or becomes insolvent, and determines to discontinue the prosecution of business, its property is thereafter affected by an equitable lien or trust for the benefit of creditors. The duty in such cases of preserving it for creditors rests upon the directors or officers to whom has been committed the authority to control and manage its affairs. Although such directors and officers are not technical trustees, they hold, in respect of the property under their control, a fiduciary relation to creditors; and necessarily, in the disposition of the property of an insolvent corporation, all creditors are equal in right unless preference or priority has been legally given by statute or by the act of the corporation to particular creditors. * * * In our judgment, when a corporation becomes insolvent and intends not to prosecute its business, or does not expect to make further effort to accomplish the objects of its creation, its managing officers or directors come under a duty to distribute its property or its proceeds ratably among all creditors, having regard, of course, to valid liens or charges previously placed upon it. Their duty is 'to act up to the end or design' for which the corporation was created (1 Bl.

Comm. 480), and when they can no longer do so their function is to hold or distribute the property in their hands for the equal benefit of those entitled to it. Because of the existence of this duty in respect to a common fund in their hands to be administered, the law will not permit them, although creditors, to obtain any peculiar advantage for themselves to the prejudice of other creditors. This rule is imperatively demanded by the principle that one who has the possession and control of property for the benefit of others—and surely an insolvent corporation, which has ceased to do business, holds its property for the benefit of creditors—may not dispose of it for his own special advantage to the injury of any of those for whom it is held."

This opinion of Justice Harlan is referred to and the case distinguished on its facts in Sanford Tool Co. v. Howe, Brown & Co., 157 U. S. 312, 15 Sup. Ct. 621, 39 L. Ed. 713. See, also, Jones on Insolvent and Failing Corporations, pp. 103, 104, 205; Williams v. Commercial National Bank, 49 Or. 498, 90 Pac. 1012, 91 Pac. 443, 11 L. R. A. (N. S.) 857; Marshall on Private Corporations, pp. 1054, 1055; Montgomery v. Phillips, 53 N. J. Eq. 203, 31 Atl. 622; Corey v. Wadsworth, 99 Ala. 68, 11 South. 350, 23 L. R. A. 618, 42 Am. St. Rep. 29; Idaho-Oregon Light & Power Co. v. Bank of Chicago, 224 Fed. 39-45, 139 C. C. A. 503.

[6] We cannot accept the view that the Trading Company waived its claim upon the assets of the Packing Company by and through the acts of Kirberger, majority stockholder in the Trading Company. As already said, Kirberger was not the corporation, and could not use the assets of the Trading Company for his own benefit, and could not deprive the creditors of the Trading Company of their claims upon the assets of the corporation.

[7] Nor can we believe that the trustee in bankruptcy is estopped from pursuing the claim involved against the Sanborn-Cutting Company upon the theory that the Trading Company and its creditors became bound by any agreement between Kirberger and the Sanborn-Cutting Company to the effect that the Trading Company would not enforce its claim against the assets of the Packing Company. This seems very clear when we keep in mind the fact that the Trading Company was the creditor, and not Kirberger, and that under such circumstances Kirberger had no authority to bind the Trading Company and its creditors.

The District Court awarded judgment to the trustees against the Sanborn-Cutting Company for $6,688.87, that sum being 66⅔ per cent. of $10,333.31, the amount of the debt of the Trading Company, with interest thereon at 6 per cent. per annum from May 12, 1914.

[8] The trustee suggests that he is entitled to a modification of the decree so that he shall recover $10,333.31, which is the amount recovered in the judgment in the courts of Alaska against the Packing Company, made up of the accounts of bills receivable, $8,582.21, plus $1,750 due by appellant for certain real estate used as a canning site. The land was conveyed by deed May 11, 1914, by the Trading Company to the Packing Company and by the Trading Company with Kirberger and the Packing Company to the Sanborn-Cutting Company for a named consideration of $10. But, as the trustee took no appeal from the decree of the District Court, we may not consider the point made

in his brief that the court erred in not making the allowance referred to. Clark v. Killian, 103 U. S. 766, 26 L. Ed. 607; United States v. Blackfeather, 155 U. S. 180, 15 Sup. Ct. 64, 39 L. Ed. 114; Guarantee Co. v. Phenix Insurance Co., 124 Fed. 170, 59 C. C. A. 376.

These views dispose of the principal points in the case. The District Court found from the evidence that the value of the property transferred was about $60,000, that the liabilities, including that to the Trading Company, amounted to $90,000, and that, if the property had been applied to the payment of the debts of the Packing Company, 66⅔ per cent. would have been paid. This finding we approve.

Our conclusions are that the District Court was right in its decree that the assignment by Ernest Kirberger to Kendall and Sanborn of the account of $8,582.21 due the Trading Company from the Packing Company was null and void, and that the appellant corporation received the property transferred to it by the Packing Company subject to the indebtedness amounting to $10,333.31 owing by the Packing Company to the Trading Company, and received the assets and property as the trustee for the benefit of the creditors of the Packing Company, and that the trustee succeeded to the rights of the Trading Company as a creditor of the Packing Company, and we affirm the decree that the trustee recover from the Sanborn-Cutting Company $6,688.87, together with interest from May 12, 1914, and also costs.

In allowing interest on the sum awarded from May 12, 1914, the court correctly regarded the $6,688.87 as money due upon the settlement of a matured account. Sargent v. American Bank & Trust Co., 80 Or. 38, 154 Pac. 759, 156 Pac. 431.

Affirmed.