## GAY et al. v. FOCKE et al.

(Circuit Court of Appeals, Ninth Circuit. August 20, 1923.)

No. 3989.

1. **Appeal and error ⬬84(4)—Decree of Supreme Court of Hawaii determining law and remanding case held not appealable.**

In suit by testamentary trustees for instructions, decree of Supreme Court of Hawaii determining the law applicable and remanding the matter with directions that the trustees account *held* not final or appealable.

2. **Wills ⬬684(1)—Trustees held to have properly treated rent from leasehold as income without making provision for amortization.**

Under will of testator owning leaseholds but no real estate, giving property in trust to pay rents and income to testator's wife for life and after her death to pay one-half thereof to the testator's sons and one-half to his daughters for their support and maintenance, and after the death of all of the children to convey one-half of the trust estate to the sons' children and one-half to the daughters' children, and providing that on death of any of testator's children the share or portion of income belonging to him should be paid to his heirs, and also directing continuance of ranching business on leased ranch, trustees *held* to have properly treated rents from a leasehold as income without making any provision for amortization.

3. **Conversion ⬬16(5)—Will directing trustees to carry on ranching business, but authorizing sale, held not to work conversion.**

Under will giving property, including certain leaseholds, in trust, and directing trustees to carry on testator's ranching and stock-raising business on leased ranch so long as it could be done profitably, and empowering them when, in their discretion, they thought sale would by reinvestment be beneficial, to sell and convey the property, there was no equitable conversion.

4. **Appeal and error ⬬878(5)—Parties not appealing not entitled to attack part of decree adverse to them.**

In suit by testamentary trustees for instructions, trustees and certain defendants who did not appeal from decree of Supreme Court of Hawaii cannot be heard to attack its holding as to construction of the will so far as adverse to them.

5. **Trusts ⬬272(1)—Apportionment of rents from leasehold between corpus and income approved.**

Where, under decree not appealed from, rentals from leasehold which expired during continuance of trust were to be apportioned between corpus and income, such apportionment was properly made by ascertaining aggregate of amounts which, if placed at 6 per cent. interest, with annual rests, on date of testator's death would have amounted to each installment of rent at the time it was received.

Appeal from the Supreme Court for the Territory of Hawaii.

Suit by H. Focke and another, trustees under the will of James Gay, deceased, against Eva Gay and others, minors, by Harry Edmondson, their guardian ad litem. A decree adverse to the minor defendants was affirmed by the Supreme Court of Hawaii, and they appeal. Affirmed.

The appellees, Focke and Von Holt, as trustees under the will of James Gay, deceased, brought this bill in equity for instructions as to their duties. All parties in being interested under the will were made respondents. They are the children and grandchildren by their guardian ad litem.

The testator, after naming executors and trustees and directing payment of funeral expenses, gave, devised, and bequeathed unto Mary Ellen Gay and

⬬For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Herman Focke all of his estate, real, personal, or mixed, wheresoever situate, in trust, nevertheless, for the uses and purposes thereinafter set forth; that is to say:

"To pay the rents, income, issues and profits arising from and out of my said estate to my wife Mary Ellen Gay for the term of her natural life, and to be applied by her for the support of herself and the support, maintenance and education of my children born of the body of my said wife Mary Ellen. And from and after the death of my said wife I direct my said trustee Hermann Focke or his successor in said trust to pay the rents, income, issues, and profits arising from and out of said trust estate as follows: One-half thereof for the support and maintenance of my sons" (naming three), "share and share alike; and as to the other part thereof, to pay the same for the support, maintenance and education of my daughters" (naming four) "share and share alike.

"And from and after the death of all my children born of the body of my said wife Mary Ellen, I direct my said trustee or his successor to convey one-half of said trust estate and all additions or increase thereto, unto the children of my sons" (naming same three), "share and share alike, and the child or children of any deceased child to take the parent's share. And as to the remaining portion of said trust estate and all additions or increase thereof, I direct my said trustee or his successor in said trust to convey the same unto the children of my said daughters" (naming same four), "share and share alike, and the child or children of any deceased child to take the parent's share.

"And I direct my said trustee or his successor in the event of the death of any of my children born of the body of my said wife Mary Ellen to pay the share or portion of the income belonging to such child to the heirs that may survive such child dying. * * *

"It is my wish and I hereby direct that my said trustees or their successors or successor, shall manage, conduct and carry on the business of ranching and stock raising at Mokuleia on the Island of Oahu, so long as it can be done so profitably, and without loss; and I hereby empower them or their successors or successor at any time when in their discretion they think that a sale of all the property at said Mokuleia would by reinvestment of the money realized from such sale of said property be beneficial and inure to the benefit of or increase the trust estate created under this will, to sell and convey the said property at Mokuleia free and barred of the trust created by this will."

The testator died in 1893; his widow died in 1895. Testator's estate consisted of two leaseholds, together with live stock, furniture, implements, and certain other personal property, which latter the trustees sold for about $4,065, and now held. The Mokuleia leasehold was for 50 years and will expire in 1934; the Ookala leasehold expired in 1908. The trustees hold the Mokuleia leasehold, the property described therein being sublet for periods somewhat less than the unexpired term of the head lease. The trustees paid over all of the net rentals of both leaseholds to the testator's widow and children. To ascertain whether their acts were proper, this suit was brought for instructions. The circuit court of the territory approved the conduct of the trustees. On appeal the Supreme Court of the territory held that with respect to the Mokuleia lease the trustees were authorized to retain the head lease, and that whatever sums they received for its use were income, and the life tenants were entitled to receive them, but that upon the testator's death the trustees should have converted the Ookala lease and held the proceeds as part of the corpus of the estate. Accordingly, the court remanded the matter and directed the trustees to account. When the matter again came before the circuit court, it was held that the sums which, if invested at the time of the testator's death, with interest at 6 per cent. per annum, with annual rests, would equal the net rentals received, when they were received from the Ookala leasehold, were corpus, and that the balance of the net rents were income. From this decision the grandchildren by their guardian ad litem again appealed to the Supreme Court of the territory, which

affirmed the decision of the circuit court and ordered final decree, from which the grandchildren by their guardian ad litem appealed to this court. Neither the children nor the trustees appeal.

Henry Holmes and H. Edmondson, both of Honolulu, Hawaii, and Warren Gregory, of San Francisco, Cal., for appellants.

William O. Smith and Louis J. Warren, both of Honolulu, Hawaii, and Edward M. Leonard, of San Francisco, Cal., for appellees life tenants.

W. L. Stanley, of Honolulu, Hawaii, and S. Hasket Derby, of San Francisco, Cal., for appellees trustees.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge (after stating the facts as above). [1] We pass extended notice of questions of practice presented by appellees by saying that while in the first decision of the Supreme Court of the territory the court, in a sense, determined the law applicable to the Mokuleia leasehold, still the decree was not final or appealable, and no decree was made which became final in form until after the second appeal. Rumsey v. New York Life Ins. Co. (C. C. A.) 267 Fed. 554. We therefore consider appellants' main assignments of error as presenting for consideration the questions: (1) Whether the net rents or part of them, received from the Mokuleia leasehold, are corpus; and (2) whether the correct method was pursued in determining what portions, if any, of the net rents from the leaseholds are corpus.

[2] It is argued by the appellants that the will is free from ambiguity, that parol evidence was not admissible to show the intent of the testator against the construction on the face of the will, and that the state of his property at the time of his death cannot be resorted to to explain testator's intention. We are unable to agree with the appellants that the will is clear and "singularly free from ambiguity" and therefore speaks for itself. No real estate was involved; all the assets were perishable or wasting, but under the will there was the clause directing the conveyance of the trust estate, with all additions and increase thereto to the grandchildren. It was therefore natural that counsel for the trustees should question the acts of his clients in construing the will as requiring that all of the net rentals should be paid to the life tenants without making provision for the preservation of the corpus of the estate for the benefit of the remaindermen. It is our duty, therefore, to follow that "first and great rule," what was the intention of the testator? Let us endeavor to put ourselves in the situation of Mr. Gay when he made his will, and from that position gather what he intended. Adams v. Cowen, 177 U. S. 471, 20 Sup. Ct. 668, 44 L. Ed. 851.

At the time of his death testator had a wife and seven children, ranging in age from 4 to 16. Testator lived with his family on the Mokuleia ranch, and, as already shown, his personal property, excluding the leaseholds, was of small value; his cash was about $816. Testator carried on the business of ranching and sublet various parts of the Mokuleia estate from which he received rentals. Referring to the Ookala lease, testator had a sublease with a sugar company; the lease yield-

ing certain percentage rentals of the sugar produced upon the land. About the time of the death of Mr. Gay, the gross annual rentals from the subleases of portions of the Mokuleia property amounted to less than $3,000, out of which he was obliged to pay a head rent of $1,250 to his lessor. This left a very limited sum. The receipts from the Ookala lease for the year just before the death of Mr. Gay were $643, and the taxes were about $40. During 1893–94 the lease yielded gross $642; in 1894–95, gross $851. At the time of the death of the testator the lessee under the Ookala lease had possesssion for 12 years, and but 7 years were left under the sugar contract. While it is true that in after years the profits from the Ookala lease increased very materially, still during the first 7 years of the trust the average amount received from that lease was about $1,400. No definite amount can be ascertained of other revenue received by Mr. Gay from the ranching business, but taking the business as conducted by the trustees during the first seven years of the trust, the average net return on the Mokuleia property was less than $1,000 per annum, after including income from all sources at Mokuleia and from the subleases, sale of cattle, and ranch profits generally. The widow and children lived on the ranch until 1895, when the widow died, and the children were taken away. At the time of the death of the testator he owed about $5,000. In the inventory the value of the Mokuleia leasehold was $7,500, and of the Ookala leasehold $5,000. The evidence is that about the time of testator's death the sugar business was undeveloped. That Mr. Gay expected his trustees to go ahead with the business of ranching and stock raising at Mokuleia is evidenced by the specific statement to that effect in his will, and there is nothing to show that he believed there would be such development in the raising of sugar as that some of his grazing land would become more valuable for sugar raising than for stock. Another circumstance is that Mr. Gay was mortally ill when he made his will. It is in evidence that he knew of the seriousness of his illness and that on May 24 he asked his physician to bring Mr. Brown "to make a new will." He executed the will in question on the 25th, and died on the 28th.

Enough has been shown to impel the belief that by the direction to the trustees to pay the rents, income, issues, and profits arising from and out of the trust estate to his wife and children, testator wished to provide for the maintenance of his large family out of the estate he would leave. How were his children to be supported unless the trustees complied with the testator's will, and went on with the ranch business so long as it could be done profitably? The pressing anxiety and the concern most natural and uppermost in the mind of one in the circumstances surrounding testator would be for his family, his wife and seven children—concern for future grandchildren was more remote.

[3] It is not possible to accept the contention that the doctrine of equitable conversion is applicable. The wish and direction of the testator to the trustees to "conduct and carry on the business of ranching and stock raising at Mokuleia" pertain to the business that Mr. Gay had followed, out of which he was receiving an income by treat-

ing the subrentals as available for operating costs and expenses. Testator understood that the Mokuleia lease was to exist for a limited term and was of wasting kind; yet, if the ranch business could be carried on profitably and without loss, the trustees were to conduct that enterprise. Conversion was inconsistent with going on with the business if profitable. Testator meant that the lease was to be held, the wasting away thereof not being looked upon as loss. Pickup v. Atkinson, 4 Hare, 624. Appellants give special weight to the clause empowering the trustees at any time when, in their discretion, they think a sale would by reinvestment of money received from sale be beneficial and inure to the benefit of the trust estate created under the will, to sell and convey the Mokuleia property free and barred of the trust created. Those words, however, do not express or imply direction that the original form of the property shall be changed. Testator distinctly gave discretion to sell when in the conduct and management of the business the trustees might believe it advantageous to sell. In this clause distinct reference is made to a sale of all the property at Mokuleia. We cannot agree with appellants that—

"For the purpose of carrying out the direction to carry on the business, and of choosing the best time to sell, after the trustees cease to carry on the business because they cannot do so profitably, they must retain it, but for no other purpose."

The discretion is not merely as to the time and manner of making a sale, but is broader in its scope, for it *empowers* the trustees at *any* time *when in their discretion* they think a sale of all the property would by reinvestment of the money realized from such sale be beneficial to the trust estate created, to sell and convey. Thus it was within their discretion to make a sale or not, as they might deem wise, without imperative direction to convert. The general rule is firmly settled that in order to work a conversion while the property is yet actually unchanged in form, there must be a clear and imperative direction in the will to convert. Pomeroy's Equity, § 1160, says:

"If the act of converting—that is, the act itself of selling the land, or of laying out the money in land—is left to the option, discretion or choice of the trustees, or other parties, then no equitable conversion will take place, because no duty to make the change rests upon them." Hemenway v. Hemenway. 134 Mass. 446; Hobson v. Hale, 95 N. Y. 605; Sauerbier's Estate, 202 Pa. 187, 51 Atl. 751.

In some of the controversies which have arisen between claims of remaindermen and life tenants there are recognitions of presumptions whereby intentions are implied. In Lovering v. Minot, 9 Cush. (Mass.) 151, Chief Justice Shaw said that it was contrary to the presumed intent of the testator to narrow the benefit intended for the first object of his bounty, for the benefit of an object more remote. Barber v. Pittsburg R. Co., 166 U. S. 83, 17 Sup. Ct. 488, 41 L. Ed. 925; Alexander on Wills, § 808. Howe v. Dartmouth (1802) 7 Ves. 137, cited by appellants as the leading case, has been recently commented upon by the Chancery Division on appeal (Re Evans Will Trusts, [1921] 2 Ch. Div. 309), with the statement that the principle as declared in Howe v. Dartmouth was that where the residue or bulk of the property is left

by the testator en masse and is given to several in succession as tenants for life and remaindermen, the duty of the court is to make effective the apparent intention of the testator. Justice Eve, for the court, asked how the apparent intention of the testator is to be ascertained where no particular directions have been given, and among other things said:

"It is equally clear that if a person gives certain properties specifically to one person for life with remainder over afterward, then although there is a danger that one object of his bounty will be defeated by the tenancy for life, lasting as long as the property endures, yet there is a manifestation of intention which the court cannot overlook." Pickering v. Pickering, 4 Myl. & C. 289.

Direction to the trustees to pay the share or portion of the income belonging to any child who may die to the surviving heirs of such child dying does not call for a construction at variance with that we have given. Testator placed in trust all of his estate, real, personal, or mixed, and then created the trust to pay the rents, income, issues, and profits arising from and out of his "said estate" to his wife for life, to be applied by her for the support of herself and the children. The testator had in mind the estate he first mentioned, which consisted of personal property, stock, and leases. Rentals, income, and profits from the leases are to be distinguished from the leases which have not been converted. He continued the trust by providing that after the death of the wife the trustee was to pay "the rent, income, issues and profits" arising from and out of "said trust estate" for the support and maintenance of his sons and daughters. "Said trust estate" meant the same estate which he had put in trust by the disposing words of his will. Subsequent clauses which directed that after the death of all of his children his trustee should convey one-half of said trust estate and all additions or increase thereto unto the children of his sons relate to the estate left in trust. In Bowden v. Bowden, 17 Sim. 64, the testator gave all of his leaseholds and other estates and effects to trustees for the benefit of his wife, daughters, and the children of his daughters, using the words "rents, issues, dividends and annual proceeds." He empowered his trustee to sell his leaseholds and to invest the proceeds on mortgage of freehold or other leasehold estate, and to lease any part of his estate. In behalf of the widow it was urged that the leaseholds, the principal part of the trust property, should be sold. The vice chancellor held that the leaseholds should not be sold. In re Nicholson, 2 Ch. Div. 111. In Chambers v. Chambers, 15 Sim. 183, holding a different view, in the language of the trust, the word "rents" was confined to freehold. Here there was nothing in the Gay estate to produce rentals except the subleases, from which he was deriving funds for the conduct of his ranch business and for the support and maintenance of himself and his family. Lewin on Trusts, star p. 809. The fact that a leasehold may be coming to an end does not change the result. Instances where life tenants may mine are not rare. Higgins Oil & F. Co. v. Snow, 113 Fed. 433, 51 C. C. A. 267, and cases cited in note to Deffenbaugh v. Hess, 36 L. R. A. (N. S.) 1105. Nor is the case altered by the fact that about 1906 the trustees stopped carrying on the ranch business. In their discretionary power

they could have sold at any time, or held, or sublet. Gray v. Siggers (1872) 15 Ch. Div. 74; Vachell v. Roberts, 32 Beav. 140; Cafe v. Bent, 5 Hare, 24; In re Pitcairn (1895) 2 Ch. Div. 199.

Appellants urge that under any circumstances the value of the subleases for the remainder of the term of the head lease after 1896 must be amortized, as was the sum received from the sale of the live stock and movable assets, and that such sum so realized should be held as corpus of the estate. The premise upon which this point is advanced is that the subleases were made for the whole term of the head lease, and therefore were in effect a sale or assignment of the head leases; but the leases (made a part of the record) were made to several different persons, and in some the rentals were not fixed at a definite sum of money, but were contingent upon the quantity of sugar produced on the premises. Furthermore the subleases were not made for the full term of the head lease, but ended a short time before the head lease expired, and each sublease had a reversionary clause for surrender to the sublessor prior to the termination of the head lease. Claims that there was an assignment are, therefore, necessarily defeated. Washburn on Real Property, §§ 692, 693, 694; Murdock v. Fishel, 67 Misc. Rep. 122, 121 N. Y. Supp. 624. We conclude that the trustees, having acted in good faith in the exercise of their discretion, will be protected in their acts with respect to the Mokuleia leasehold and the payments of the rents therefrom to the life tenants.

[4] No appeal having been taken from the decree of the Supreme Court by the life tenants or. the trustees, they will not be heard to say that the Supreme Court was in error in holding that there is a distinction between the proper construction to be put upon the will as to the two leases. We are therefore limited to the second question presented by appellants; that is, as to the method of ascertaining the corpus or capital value of the Ookala leasehold. Sanborn-Cutting Co. v. Paine, 244 Fed. 672, 157 C. C. A. 120; Guaranty Co. v. Phœnix Ins. Co., 124 Fed. 170, 59 C. C. A. 376.

[5] The circuit judge in Hawaii ascertained the rentals produced by that particular leasehold from the time of the death of the testator to the expiration of the lease, and after finding the true actuarial value of the leasehold in 1893, directed the trustees to set aside the amount so found as capital, or corpus, of the estate. The opinion of the Supreme Court states how the apportionment of the sums representing income for the life tenants and capital for the remaindermen was made.

"In order to arrive at that value, each installment of rent received by the trustees from said leasehold was considered to be part income and part capital. To determine what portion of each installment of rent constituted capital, calculations were made by the actuary to ascertain what sum put out at 6 per cent. interest, with annual rests, on the date of the testator's death, would amount to each installment actually received at the time it was received. Each installment was figured separately, and the sum of the amounts thus ascertained equals the value found by the circuit judge."

The rule adopted by the circuit judge was considered in Kinmonth v. Brigham, 5 Allen (Mass.) 270, and became very fair in its applicability to the case, where, as the Supreme Court of the territory has said:

"It is obviously difficult * * * to determine what was the value of the investment at the testator's decease, by any other mode than a computation based upon the whole product ultimately realized from it."

Similar methods of arriving at correct results are approved in Underhill on Trusts and Trustees, pp. 236, 237, 244; Lawrence v. Littlefield, 215 N. Y. 561, 109 N. E. 611; and in the recent case In re Hollebone (1918) 2 Ch. Div. 93.

The decree is affirmed. Costs of this appeal to be paid one-half by appellants; one-half by appellees.