## CHAVEZ *v.* BERGERE.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF NEW MEXICO.

No. 5. Submitted October 30, 1913.—Decided December 8, 1913.

Although containing some words adapted to a present transfer, if the instrument taken in its entirety shows that it was a mere contract to convey upon a specified contingency it will be construed as such and not as a conveyance. *Williams* v. *Paine,* 169 U. S. 55.

Where an alleged Mexican grant was rejected, one who was in possession under a contract to purchase the same if confirmed, and who thereafter acquired portions thereof under the public land laws, was not obliged to surrender such portions in order to recover what he had paid his vendor on account of the contract to purchase the entire tract.

Possession by the vendee under an uncompleted contract to purchase is not adverse to the vendor, nor does it become so until after unequivocal repudiation of the relation created by the contract.

Manifest intention of the parties must be given full effect; and so *held* that approval by the Surveyor General of a Mexican grant referred to the approval of the grant by the proper authority.

Where a contract to purchase under which the vendee is in possession is terminated by an event which renders it impossible for the vendee to complete, his continued possession thereafter is without right and if he sets up an adverse right in himself demand for surrender is not a prerequisite to maintenance of ejectment.

In ejectment, defendants who acquired possession as conditional vendees of the plaintiff are estopped from calling in question the title of the latter.

14 N. Mex. 352, affirmed.

THE facts, which involve the construction of a contract for sale of an unconfirmed Mexican grant, and the relative rights of the parties thereto, are stated in the opinion.

*Mr. A. B. Renehan* for appellants.

*Mr. T. B. Catron* and *Mr. R. C. Gortner* for appellees.

MR. JUSTICE VAN DEVANTER delivered the opinion of the court.

This was an action in ejectment to recover the possession of 317 acres of land in Santa Fe County, New Mexico. The defenses interposed were the general issue and that the cause of action did not accrue within ten years before the action was begun. A trial to the court without a jury resulted in a judgment for the plaintiffs, which was affirmed by the Supreme Court of the Territory, 14 N. Mex. 352, and the case was then brought here. A statement of the facts, in the nature of a special verdict, and of the rulings and exceptions upon the rejection of certain evidence was made and certified by the appellate court agreeably to the act of April 7, 1874, 18 Stat. 27, c. 80, § 2.

Briefly stated, the principal facts are as follows: On June 22, 1878, Manuel A. Otero and Jesus M. Sena y Baca entered into an agreement written in Spanish a translation of which is as follows:

"Know all men by these presents: That I, the undersigned, Manuel Antonio Otero, resident of the county of Valencia, in the territory of New Mexico, for consideration, have sold and transferred in favor of Jesus M. Sena y Baca and Agapita Ortiz, his wife, a ranch known as the Ranch of Galisteo, which is situated in the county of Santa Fe and Territory aforesaid, known as the ranch which was formerly of the deceased Don Miguel E. Pino; and that I will give and execute the documents of conveyance of said ranch in favor of Jesus M. Sena y Baca and Agapita Ortiz, as soon as there shall be adjudicated and approved by the Surveyor General the Grant of Bartolome Baca of a tract which was ceded him by the Governor Melgarez in the year 1819, and the which is situate in the county of Valencia in the Territory of New Mexico, aforesaid, and furthermore they will take possession of the aforesaid ranch and will have and enjoy all the products

of the same until meanwhile the proper documents may be executed, and in conformity with the above stated; and the said Jesus M. Sena y Baca so agrees and has signed here jointly with me.

"In Witness Whereof, we sign the present in La Constancia, County of Valencia, this 22nd day of June, A. D. 1878.

"MANUEL A. OTERO.<br>"JESUS M. SENA Y BACA."

At that time the Galisteo ranch and the Bartolome Baca tract were supposed or claimed to be unconfirmed Mexican grants, the former of 24,000 acres and the latter of a vastly greater area. Otero had some substantial right in the former, and Sena y Baca was asserting an undivided interest in the latter, as an heir of the original grantee. As part of the transaction between them, Otero was to receive, and a few days after the signing of the agreement did receive, from Sena y Baca a deed for the latter's asserted interest in the Bartolome Baca tract.

The alleged grant from Mexico of that tract was thereafter presented to the Surveyor General for New Mexico for examination and report under § 8 of the act of July 22, 1854, 10 Stat. 308, c. 103. That officer, on September 7, 1881, made a report recommending, upon the proofs then before him, that the grant be not confirmed but rejected, and this report was duly laid before Congress for such action thereon as it should deem just and proper. While the matter was awaiting action by Congress, the Court of Private Land Claims was created by the act of March 3, 1891, 26 Stat. 854, c. 539, and was invested with jurisdiction of proceedings looking to the confirmation or rejection of such grants. The Bartolome Baca grant was then appropriately brought before that court for consideration and adjudication, and was confirmed to the extent of 11 square leagues; but in 1897, on an appeal to this court

the judgment of confirmation was reversed and the grant rejected as invalid because resting upon a forged signature of the Governor. *United States* v. *Bergere*, 168 U. S. 66.

In the meantime the Galisteo grant was presented to the Court of Private Land Claims for consideration and adjudication, and was by that court confirmed as a valid grant for 317 acres, only, the confirmed area being the land here in controversy.

The plaintiffs are heirs at law of Otero, who died in 1882, and the defendants are the successors in interest of Sena y Baca and his wife under the agreement of 1878. The mesne conveyances through which the defendants became such successors were quit-claim deeds, and were accompanied by a delivery of the original agreement.

Sena y Baca and his wife went into possession of the land in controversy under and pursuant to that agreement, and they and their successors continued in possession, farmed the land, made such improvements thereon as were incidental merely to its use in that way, received the rents and profits, paid some but not all of the taxes, and exercised other possessory rights ordinarily incident to ownership, but all consistent with the rights conferred by the agreement of 1878.

In the proceeding in the Court of Private Land Claims relating to the Galisteo grant, the successors of Sena y Baca and his wife sought to secure a confirmation of the grant for the full 24,000 acres theretofore claimed, and in that connection traced their right through the agreement with Otero, thus recognizing his title.

The present action was begun April 3, 1901, without any prior demand for the possession. At that time the defendants were openly claiming full title in themselves, notwithstanding the prior adjudication of the invalidity of the Bartolome Baca grant and notwithstanding there had been no conveyance by Otero or his heirs of the Galisteo grant as contemplated by the agreement.

Other facts disclosed in the certified statement will be
noticed in connection with particular questions upon the
decision of which it is claimed they have a bearing.

The territorial courts held that the agreement of 1878
was not a conveyance, but an executory contract for a
conveyance in the event, and only in the event, of the
favorable adjudication and approval of the Bartolome
Baca grant; that this event became an impossible one
when, in 1897, this court rejected that grant as invalid;
that the defendants' rights under the agreement were
thereby terminated and extinguished; that the possession
of Sena y Baca and his wife, which was continued by their
successors, was acquired and held under the agreement
and in recognition of Otero's title, and therefore was
not adverse; and that upon all the facts the plaintiffs
were entitled to recover.

While it does not appear to be claimed that the ques-
tion of title as between these litigants was adjudicated
by the Court of Private Land Claims in the Galisteo
case, it is well to observe that the act creating that court
and defining its jurisdiction declared in subdivision 5 of
§ 13: "No proceeding, decree, or act under this act shall
conclude or affect the private rights of persons as between
each other, all of which rights shall be reserved and saved
to the same effect as if this act had not been passed; but
the proceedings, decrees, and acts herein provided for
shall be conclusive of all rights as between the United
States and all persons claiming any interest or right in
such lands." See *United States* v. *Conway*, 175 U. S.
60, 71.

1. It is urged here that the agreement of 1878 in itself
transferred the title to the Galisteo grant from Otero to
Sena y Baca and his wife, and that the conveyance which
was to be executed upon the adjudication and approval
of the other grant was to operate only by way of a further
assurance. Like the territorial courts, we think other-

wise. Although containing some words adapted to a present transfer, the instrument, taken in its entirety, shows that it was a mere contract to convey upon the contingency specified, with a provision investing the prospective vendees with the right of possession in the meantime. Had a present conveyance been intended, the right to a further assurance hardly would have been conditioned upon a contingency in no wise bearing upon the adequacy of the original conveyance, and, equally, the provision respecting the possession in the interim would have been superfluous. Then, too, the informality of the instrument, the signing by both parties, and the absence of an acknowledgment make against the claim of a conveyance *in præsenti*. Bearing in mind that the question is one of intent, and judging of this by what appears upon the face of the instrument, we think it clearly was designed to be a contract to convey and not a conveyance. See *Williams* v. *Paine*, 169 U. S. 55, 76.

2. In 1898 and 1899, after the Bartolome Baca grant was adjudged invalid, the plaintiffs severally made application, under §§ 17 and 18 of the act of 1891, as amended February 21, 1893, 27 Stat. 470, c. 149, and June 27, 1898, 30 Stat. 495, c. 504, for small-holding claims of 160 acres each within the limits of the rejected grant; and upon the trial the defendants sought to make proof of the advantageous sale or disposal of those claims. The evidence was rejected, and this it is contended was prejudicial error because, first, what was done tended to show that the plaintiffs treated the agreement of 1878 as executed rather than executory, and, second, even if the agreement was executory, the plaintiffs could not recover in the action without first surrendering to the defendants the advantages obtained through those claims. The contention is untenable. The right to those claims did not arise out of the agreement of 1878 or out of the rejected Bartolome Baca grant, but arose, if at all, because the

plaintiffs were in possession and the United States permitted the acquisition of title to public land in New Mexico in that way. The alleged Bartolome Baca grant being out of the way, whether the plaintiffs secured title to the 160-acre tracts and what they did with them were matters which did not concern the defendants.

3. Another contention is that the facts certified demonstrate that the defendants and their predecessors had been in adverse possession for more than ten years when the action was begun, and therefore that the defense of the statute of limitations was well founded. In our opinion, the territorial courts rightly held otherwise. Sena y Baca and his wife went into possession in virtue of a right so to do which was expressly given by the agreement and was to continue until the happening of the event whereby their right to a conveyance was to be determined. Thus, their possession was not hostile or adverse, but in subordination to the Otero title, and the possession of their successors was plainly of the same character up to the time of the determinative event. There had been no unequivocal repudiation of the relation created by the agreement, for all that was done was consistent with a holding under it. Not until the conditional right to a conveyance was terminated did the possession cease to be a permissive one under the agreement, and that conditional right was not terminated until this court adjudged the Bartolome Baca grant invalid and rejected it. That was less than four years before the action was begun.

We do not overlook the reference in the agreement to the Surveyor General as the one whose decision was to be determinative, or his adverse report which preceded the action by more than ten years. While the agreement uses the words "shall be adjudicated and approved by the Surveyor General," the naming of that officer evidently resulted from a misconception of his power and duty. Under the act of 1854, in force at the time, he was

not entrusted with power to adjudicate and approve Mexican grants, but was required to examine into their status and report thereon as a convenient means of aiding Congress in determining what should be done. His action was merely advisory, the power to decide and to approve or reject being reserved to Congress. *United States* v. *Ortiz,* 176 U. S. 422, 427. But notwithstanding the mistake, the intention of the parties is manifest and full effect should be given to it. To them the important thing was the adjudication and approval of the Bartolome Baca grant, and the particular governmental agency from which such action should come was of secondary consideration. They could make their future acts and rights dependent upon the former, as was done, but were without power to designate the latter. Evidently they named the Surveyor General in the belief that the power to adjudicate and approve had been lodged in him, their meaning being the same as if they had said "shall be adjudicated and approved by the proper authority." This, in our opinion, is the true construction of the agreement. Of course, an authorized adjudication and approval was contemplated, not one that would be without authority and of no effect.

Being in the nature of a recommendation only, the adverse report of the Surveyor General was not final and bound no one. It did not even preclude him from making a further examination and basing a favorable report thereon. *United States* v. *Ortiz, supra.* Had Congress disapproved his adverse report and confirmed the grant, we entertain no doubt that the confirmation would have satisfied the condition of the agreement and have entitled Seña y Baca and his wife to the stipulated conveyance; and a like result would have ensued had the decision of this court been one of confirmation instead of rejection.

It follows that the relation created by the agreement was not terminated by the Surveyor General's report in 1881, but continued until the adverse decision of this

court in 1897, and that the possession in the interim, like that before, was in virtue of the agreement and not adverse.

4. After the agreement was terminated by the adverse decision upon the Bartolome Baca grant the continued possession of the defendants was without right, and when the action was begun, almost four years thereafter, they were asserting full title in themselves. Therefore, a demand that they surrender the possession was not a prerequisite to the maintenance of the action.

5. We are asked to say that the findings do not show title in the plaintiffs' ancestor, Manuel A. Otero, or, at least, are so conflicting upon that point as to afford no basis for the judgment. The findings to which attention is invited may be summarized as follows: (a) At the date of the agreement the title to the land in controversy was in Otero; (b) as confirmed, the Galisteo grant consists of the land in controversy, but prior to confirmation it was claimed to embrace a much larger area; (c) Otero's title to the grant was founded upon a conveyance in 1856 which excepted three designated parcels theretofore transferred to others; and (d) the plaintiffs' proofs did not disclose whether the land in controversy passed under that conveyance or was within the excepted parcels.

While recognizing that these findings are confusing, if not conflicting, we think the judgment is adequately sustained by other findings which show that the agreement of 1878 did not contain the exceptions shown in the conveyance of 1856; that Sena y Baca and his wife went into possession of the land in controversy under that agreement; and that the possession which passed from them to their successors, including the defendants, was likewise a possession in virtue of the agreement. In short, the defendants acquired possession as conditional vendees of Otero, and so are estopped from calling his title in question. As is said in Tyler on Ejectment (p. 543):

"There is a class of cases in which the defendant is not permitted to controvert the title of the claimants in an action of ejectment on the ground of *estoppel.* These are cases where a privity exists between the defendant and the plaintiff, or those from whom he derives title. If a privity in estate has subsisted between the parties, proof of title is ordinarily unnecessary on the part of the plaintiff, for the reason that a party is not permitted to dispute the title of him by whom he has been let into possession. In all these cases, therefore, the proof is directed to the question as to whether such a relation exists between the parties as to operate as an estoppel, and thereby supersede the necessity of introducing any evidence to establish the title of the claimant."

And again (p. 559): "Although strictly speaking, the relation of landlord and tenant is not created between vendor and vendee; yet the vendee, in ejectment by the owner against him, is absolutely estopped, from either showing title in himself, or setting up an outstanding title in another; and the same rule applies to one coming into possession under the vendee, either with his consent, or as an intruder."

Of like import are *Lucas* v. *Brooks,* 18 Wall. 436, 451; *Jackson* v. *Walker,* 7 Cow. 637, 642; *Towne* v. *Butterfield,* 97 Massachusetts, 105; *Lacy* v. *Johnson,* 58 Wisconsin, 414, 423.

As we find no error in the record, the judgment is

*Affirmed.*