## TJOSEVIG et al. v. DONOHOE et al. *

(Circuit Court of Appeals, Ninth Circuit. February 2, 1920.)

No. 3360.

1. TRUSTS ⊂⊃17, 18(3), 101—TRUST ARISES FROM CONTRACT TO CONVEY PROPERTY IN CONSIDERATION OF SERVICES, NOT WITHIN STATUTE OF FRAUDS.

Where, on performance by complainants of services under a written contract with defendants, complainants became entitled to conveyance of an interest in mining claims, legal title to which was in defendants, from that time defendants held complainants' interest in trust, and such trust relation cannot be attributed to a subsequent oral agreement to defer the conveyance, so as to bring it within the statute of frauds.

2. DEEDS ⊂⊃6—AGREEMENT TO CONVEY PROPERTY NOT CONVERTED INTO CONVEYANCE.

A contract providing that, on performance by complainants, defendants should convey to them an interest in certain property, held not converted from an agreement to convey into a conveyance by a further provision that, if defendants should be unable or refuse to convey, it should be treated as conveyance.

3. MINES AND MINERALS ⊂⊃54(2)—CONSTRUCTION OF QUITCLAIM AS TO PROPERTY CONVEYED.

Where the grantors in a quitclaim deed to mining property represented that they were sole owners, and they in fact held the legal title of record, which they purported to convey, they cannot claim, as against the owner of an equitable interest who affirms the sale, that their deed did not convey such interest.

4. APPEAL AND ERROR ⊂⊃878(1)—APPELLEE NOT ENTITLED TO MODIFICATION OF DECREE.

A complainant, who does not appeal from a decree awarding him affirmative relief, cannot review it as to the denial of a portion of the relief sought.

Appeal from the District Court of the United States for the First Division of the District of Alaska; Robert W. Jennings, Judge.

Suit in equity by T. J. Donohoe and Edmund Smith against Christian Tjosevig and others. Decree for complainants, and defendants appeal. Affirmed.

See, also, 255 Fed. 5, 166 C. C. A. 333.

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*Certiorari denied 251 U. S. —, 40 Sup. Ct. 396, 64 L. Ed. —.

The appellees, in a suit which they brought against the appellants, the Tjosevig Copper Company and other parties defendant, alleged that the appellees and appellants entered into a contract by which the appellees, as attorneys at law, were to represent the appellants in litigation concerning their interests in certain designated mining claims, in consideration of which the appellants were to deed to the appellees an undivided 7½ one-hundredths interest of the total interests remaining to the appellants after the conclusion of such litigation; that it was agreed in the contract that said specified undivided interest in and to each of the claims should be conveyed immediately after the settlement of the litigation by good and sufficient quitclaim or mining deed, and that in case the appellants were unable or refused to execute said deed the contract should be understood to be "a conveyance, and the said parties of the first part hereby give and grant unto the said parties of the second part, their heirs, executors, administrators, and assigns, the said undivided 7½ one-hundredths in and to said above-described lode mining claims, to have and to hold the same unto the said parties of the second part, their heirs, executors, administrators, and assigns, forever." The complaint alleged that the appellees performed said contract on their part, resulting in a decree on April 6, 1911, the effect of which was set forth, but that the appellants ignored their rights and sold the claims for a large amount of money and stock, under some kind of an arrangement with the defendant corporations under which some of the money has been paid, and the remainder of money and stock has been placed in escrow, and they prayed that they be adjudged to be owners of their percentage in the money and stock for which the said claims had been sold, and prayed for an accounting.

· The appellants filed their joint answer, admitted the contract, and alleged the sale to have been for $117,000 in cash and 125,000 shares of stock, but alleged that the sale was a quitclaim of their interests only, and no more, in some of the claims mentioned in the decree of 1911, and of certain other claims not so mentioned. The answer admitted that at the time when the same was filed, March 3, 1917, the $117,000 had been paid to the First Bank of Cordova as trustee, and alleged that whatever interest the appellees ever had had become forfeited to the appellants for nonperformance of their proportion of the assessment work under and by virtue of regular proceedings which were set forth.

The appellees replied, denying that the appellant's deed was only a quitclaim of their right, title, and interest, and alleged that the other claims embraced in the conveyance were of no value. Concerning the alleged forfeiture, they alleged that there was a parol contract by which the appellants were to do the assessment work for the appellees in consideration of the latter looking after the legal end and endeavoring to effect a sale, which contract appellants performed, and they denied that the forfeiture proceedings were legal.

The appellees thereafter filed their amended and supplemental complaint, in which, in addition to the principal allegations of the original complaint, they alleged that the price to be received by the appellants for the claims was $121,000 in cash and 125,000 shares of stock, and that the cash had been paid to the First Bank of Cordova as agent and trustee of the appellants.

To the amended and supplemental complaint Christian and Eli Tjosevig filed their joint answer, setting up, as before, the defense of forfeiture of the appellees' rights and of the quitclaim only of the appellants' rights, and alleging that the sale was made in consideration of the conveyance of claims and interest in addition to those mentioned in the contract, to which additional claims and interests the appellees had no right or title, and that these additional claims and interests were of great value, and that there was no way of determining or ascertaining, in case the court should find that the appellees were entitled to any part of the money received by the appellants, what their proportion or share should be, and alleging further that $3/48$ of the sum received was the sole property of the appellant Halvorsen, and that for that interest, so belonging to him exclusively, he was to receive $20,000. And the answer pleaded estoppel against the appellees on the ground, as alleged, that they had failed to assert any claim to the mining claims, and refused to accept a deed

or conveyance thereof, and refused to assist in developing the claims, and that they knew in April, 1916, that negotiations were pending for the sale of the claims, but failed and neglected to assert any right or interest in the same, until after the claims had been sold.

The appellees replied, setting up the parol contract as to the performance of assessment work, denied that the deed given by the appellants was a quitclaim of only their right, title, and interest, denied that $3/48$ interest of the purchase money belonged to Halvorsen.

The appellant Halvorsen filed his separate answer, alleging that subsequent to the decree of April 6, 1911, he purchased from Holman, Ekemo, and Hazlet certain interests which were in no way involved in that litigation, and that he, joining in the conveyance to the Copper Company, sold to the company those interests for $20,000, $3,000 of which had been paid to him; the remaining $17,000 being the balance of the purchase price then held by the First Bank of Cordova under the injunction of the court.

The appellees replied alleging that Christian Tjosevig was, at the time of the execution of the contract, the owner of the said interests which later were so transferred to Halvorsen, and that Halvorsen paid no consideration therefor, but held the same as trustee for Christian Tjosevig.

The court below, upon the evidence, made findings of fact, the substance of which is as follows: That the contract between the appellees and the appellants was as alleged in the complaint; that the appellees performed the services which they had agreed to perform, and thereby became owners of and entitled to a deed from the appellants to an undivided 7½ per cent. of the interest of the appellants in said claims; that on the request of the appellants Christian Tjosevig and Eli Tjosevig the appellees agreed not to demand a deed, but that those appellants should hold the legal title to the appellees' interest in trust for them; that said appellants agreed that they would annually, until the sale of the mining claims was made, do and perform all the assessment work required by law for the proportionate share and interest of the appellees, in consideration of which the appellees agreed that they would use their best efforts in endeavoring to secure a purchaser for the said property, and when called upon would draw the necessary papers, contracts, and agreements in connection therewith, and would counsel and advise the said Tjosevigs in all matters connected with their interest, and that pending the sale of the said property the said Tjosevigs should continue to hold the legal title to the appellees' interest in trust for them; that the said appellants, although they agreed to do the assessment work, neglected to do the annual assessment work, or make the improvements annually required by law, on or for the benefit of said mining claims during the years 1911 to 1915, inclusive, and no money was due from the appellees for assessment work, as said appellants well knew when they published the forfeiture notice and attempted to forfeit the appellees' interest.

The court found that the sale was made in June, 1916, of all the interest of the appellants, as well as the interests of the appellees, for $117,000 in cash and 125,000 shares of capital stock of the Copper Company; that the appellant Halvorsen joined in said deed for the purpose of conveying the legal title to $3/48$ interest in certain claims owned by Christian Tjosevig, the record title of which had been placed in Halvorsen, and which he held as trustee for Christian; that possession was delivered to the Copper Company of all said mining claims, and the Copper Company went into the possession of each and every part thereof, and that said appellants wholly ignored the rights of the appellees, and refused to account or pay them any part or portion of the purchase price; that in all said transactions and during all the time thereof Christian Tjosevig acted as attorney in fact and as agent for Eli Tjosevig and Andrew Halvorsen; that the appellees have at all times acquiesced in the sale of said property, by claiming their full and proper interest in the consideration; that the said appellants were the holders of the legal title in the mining claims as trustees for the appellees, and did not act in good faith when they attempted to forfeit the interests of the appellees; and the court made findings to the effect that all of said forfeiture proceedings were void, and found that the appellant Christian Tjosevig, with the knowledge and consent

262 F.—58

of the other appellants, willfully and intentionally mingled the trust property with the nontrust property in such a way as to make it impossible to ascertain the relative value of each, or to ascertain whether the trust property, by being combined with the nontrust property, has not conferred a greater benefit on the nontrust property than the combination has conferred upon the trust property.

As conclusions of law the court found that the appellants sold and conveyed the appellees' interest under and by virtue of the deed to the Copper Company, and that the appellees are entitled to a decree against the appellants for 7½ per cent, of the $117,000, with interest on the same from December 1, 1916, at 8 per cent. per annum, and to 7½ per cent. of the 125,000 shares of the stock of the Copper Company. From that decree the appeal is taken.

John Rustgard, of Juneau, Alaska, for appellants.

Hellenthal & Hellenthal, of Juneau, Alaska, Lyons & Orton, of Seattle, Wash., Donohoe & Dimond, of Valdez, Alaska, and Smith, Chester & Brown, of Seattle, Wash., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1] It is contended that a trust relationship between the appellees and the appellants was neither pleaded nor proved, and the statute of frauds is invoked. The statute of frauds is complied with in the fact that the appellants held the appellees' interest in trust under a contract which was in writing and was signed by the appellants, and which created the trust. It provided that the appellees, after the conclusion of the litigation, should receive from the appellants a deed of a specified undivided interest in the mining claims. It was competent, either by a parol agreement or by inaction, to postpone the conveyance. There is no denial that it was in fact postponed, and there is no contention that an interest in the property was ever conveyed to the appellees after the date of the contract. The complaint plainly shows that a trust was pleaded. The appellees, after setting forth in their amended complaint the terms of the contract and their performance thereof, alleged that from the date of the original decree, which was obtained by them under that contract, until the sale to the Copper Company, the appellants held the interests of the appellees in trust for them.

The appellants urge as against the existence of a trust that the parties to the contract of 1911 treated that instrument as conveying title to the appellees, and they point to the fact that in the interval between the final decree of April 6, 1911, and the sale to the Copper Company the appellees signed, together with the appellants, certain options that were given on the mining properties. There is nothing in that fact to show that the appellants did not hold the property in trust. It indicates only that the owners of the equitable interest and the owners of the legal title were working in harmony and had agreed upon terms of sale. It has no further probative value. Nor does the fact that after the forfeiture proceedings the appellants claimed the properties adversely to the appellees negative the existence of a trust. Nor does the fact that the appellees finally became convinced that the appellants were intending to "beat them out of their interest" in the property tend to prove that there was no trust. And the same may be said of any

alleged admissions of the appellees that it was incumbent upon them to contribute to the assessment work.

The appellants are in error in asserting that the court below found that the appellants were trustees of an express trust created orally. What the court found was that on the request of the appellants the appellees agreed not to demand a deed and agreed that the appellants should hold the legal title to their interest in trust for them. That is not a finding that an express trust was created by parol. It is a finding that the date of the conveyance was by agreement of the parties deferred, and that in the meantime the trust which had been created by the contract continued in force.

[2] The appellants contend that, notwithstanding the deed to the Copper Company, the appellees still hold whatever interest they had in the mining claims, that the contract itself operated as a transfer of title to the appellees, and that they have not been injured by the deed to the Copper Company. We are unable to assent to this view. While the contract contains words of present grant, it also clearly shows that it was the intention of the parties that at the close of the contemplated litigation a deed should be executed to the appellees. Says the contract:

"The said 7½ one-hundredths undivided interest in and to each said claim shall be conveyed immediately after the settlement of the said litigation as aforesaid by a good and sufficient quitclaim or mining deed, and in case the said parties of the first part are unable to or refuse to execute said deed as above, then and in that case this instrument shall be understood to be and it is hereby agreed to be a conveyance."

It is not shown that the appellants were unable to convey, or that they refused to convey, and the contingency, therefore, on which the contract was to stand for a deed, never arose. Instead of executing the deed at the close of the litigation, as the contract required, the appellants agreed, as the court below found, to retain the title to the interest of the appellees in order the better to negotiate a sale of the mining claims.

The appellants point to the allegation of the original complaint which charges that they failed and neglected to convey to the appellees their interest in the claims. That, however, is far from saying that the appellants refused to convey. The case was tried on the amended complaint. If the original complaint had contained an allegation that the appellants refused to convey, the appellees were not precluded from otherwise alleging the facts in an amended complaint. In Williams v. Paine, 169 U. S. 55, 76, 18 Sup. Ct. 279, 287 (42 L. Ed. 658) the court said:

"We agree generally that, although there are words of conveyance in præsenti in a contract for the purchase and sale of lands, still, if from the whole instrument it is manifest that further conveyances were contemplated by the parties, it will be considered an agreement to convey and not a conveyance. The whole question is one of intention, to be gathered from the instrument itself."

To the same effect is Chavez v. Bergere, 231 U. S. 482, 34 Sup. Ct. 144, 58 L. Ed. 325.

[3] The appellants contend, further, that it is immaterial whether the appellees' interest was legal or equitable; that whatever interest in the premises they ever had they still have, for the reason that the deed to the Copper Company was a quitclaim deed and transferred only the interest of the grantors. The record leaves no room to doubt that in conveying the mining claims to the Copper Company the grantors intended to grant, and the Copper Company and its agent understood ·that they were to receive, an absolute transfer of all interests in the claims. The evidence is that Christian Tjosevig, for himself and the other appellants, represented that the appellees' interest had been advertised out, and there was no fear of any question regarding the title; that the grantee had expected to receive a warranty deed, but that a quitclaim deed was accepted only for the reason that patents had not yet issued to the mining claims; that Christian Tjosevig repeatedly stated that it was the intention to convey a clear title to the whole property, and that after the appellees brought their suit he stated to the officers of the purchaser that the appellees' claims were fictitious; that it was never his intention to convey anything but a clear title.

In an option for a deed given on April 6, 1916, by the appellants to Rowe for the sale of the mining claims, the grantors gave the right to purchase "all their right, title, and interest in [which said interest includes the whole] those certain mining claims or lodes," etc. That option was forfeited, and on June 6, 1916, when the claims were sold to the Copper Company, a contract was entered into between the grantors in the deed and the Copper Company, one purpose of which was to make provision for the terms of payment of the purchase price. It was agreed in that contract that the Copper Company should have the right to enter upon said mining claims "for the purpose of mining, developing, and equipping the same, and operating the same as a going mine or mines, and to sell or dispose of any of the ores so mined or milled." The contract and the deed are parts of one transaction and are to be construed together. The contract shows that the Copper Company was given the unrestricted right to enter upon said mining claims and to mine and dispose of all the ores thereof, on the assumption that the appellants and Nils Tjosevig were the owners of said claims and were possessed of the right to mine and sell all the ores therein.

It is the general rule that the grantee in a quitclaim deed takes only the interest of his grantor in the premises. Lindblom v. Rocks, 146 Fed. 660, 77 C. C. A. 86. In 18 C. J. 314, it is said:

"But the fact that a deed purports to convey the grantor's interest is not conclusive of an intention to convey only that interest. The intention, to be gathered from the whole instrument, must prevail."

In Wise v. Watts, 239 Fed. 207, 152 C. C. A. 195, in giving effect to a conveyance which was in the form of a quitclaim deed, this court held that the paramount object in the construction of a deed is to give effect to the intention of the parties, which is to be gathered from a consideration of the entire instrument, read in the light of the facts and circumstances under which it was executed. The deed made to the Copper Company had greater efficacy than a mere quitclaim. By

its terms it conveyed "all the estate, right, title, interest, property, possession, claim, and demand whatever, as well in law as in equity, of the grantors." The grantors held at that time the legal title to all interests in the claims as they appeared of record; the appellees' contract not having been recorded. Taking the language of the deed, together with the coincident contract between the parties, and the facts and circumstances surrounding the transaction, we entertain no doubt that the deed was, and was intended to be, a conveyance of all interests in the claims. Trudeau v. Fischer, 96 Neb. 275, 147 N. W. 698; Garrett v. Christopher, 74 Tex. 453, 12 S. W. 67, 15 Am. St. Rep. 850; Holland, Adm'r v. Rogers, 33 Ark. 251; Plummer v. Gould, 92 Mich. 1, 52 N. W. 146, 31 Am. St. Rep. 567; Dennison v. Ely, 1 Barb. (N. Y.) 610.

It is contended that the Copper Company had, through Rowe, its agent, actual notice of the interest of the appellees before making the purchase; that Rowe had seen the record at Chitina showing that the interests of the appellees had been forfeited for nonperformance of assessment work, and must have also seen that the notice showed on its face that it was absolutely defective. It does not follow from this that Rowe discovered any defect in the forfeiture proceedings. The appellants' counsel in the court below had discovered no such defect. They set forth in the answer that the appellants had acquired the appellees' interest by forfeiture, and, although they have abandoned that contention in this court, they stoutly maintained it in the court below. Rowe testified that Christian Tjosevig told him that he had "advertised everybody out." Said the witness:

"He asked me at that time if I had not found the statement to be true that they had been advertised out. I admitted I had checked up his statements at the office of the mining recorder at Chitina on my first trip to Alaska, and had found them correct according to the records of that office. There never was any question in my mind but that Christian Tjosevig was transferring all the right, title, and interest in the property to the corporation. He said many times that everything was cleaned up."

The appellants advert to the fact that at the time when the appellees began the present suit a considerable proportion of the purchase money had not been paid, and they argue that the Copper Company was not a purchaser in good faith. It would make no difference in this case, if the Copper Company had notice of all the antecedent facts in relation to the appellees' claim of interest and had not paid the purchase price at the time when this suit was begun. The controlling fact is that the appellants, together with Nils Tjosevig, made a conveyance of all interests in the property to the Copper Company. The appellees had the right to regard the conveyance as a thing accomplished, and to acquiesce in it, and to require the appellants to account to them for their proportion of the purchase money then paid or agreed to be paid. It is not important to inquire what remedy, if any, the appellees might have had as against the Copper Company.

Of the assignment of error directed to the finding that the legal title to ³/₄₈ interest in several claims, which stood at the time of the conveyance to the Copper Company in the name of Halvorsen, was held

by him as trustee for Christian Tjosevig, it is sufficient to say that Halvorsen joined in the conveyance with the other grantors, and thereby transferred whatever 'interest he had in the claims. The record is convincing that he had no right to that ³/₄s interest. But, if there is due him any proportion of the proceeds which his coappellants received, his demand is against them and not against the appellees. Halvorsen joined with the other appellants in petitioning the court to release to them all of the purchase money held in trust, excepting $17,000, which was deemed more than sufficient to meet the appellees' demand. The court below went as far as equity permitted in expressing its purpose to direct that any portion of the fund in excess of the amount awarded to the appellees, with interest and costs, should be turned over to Halvorsen.

[4] The appellees ask us' to modify the judgment, and they point to the fact that in the opinion of the court below it was said that they were entitled to 7½ per cent. of the $3,000, which the appellants received on the forfeiture of the contract to Rowe; the court having omitted in the decree to add that amount to the judgment. The appellees, not having appealed from the decree awarding them affirmative relief, cannot review the denial of a portion of the relief which they sought. Sanborn-Cutting Co. v. Paine, 244 Fed. 672, 682, 157 C. C. A. 120; Lasswell Land & Lumber Co. v. Lee Wilson & Co., 236 Fed. 322, 149 C. C. A. 454.

The decree is affirmed.