### SHAPIRO v. CHRISTOPHER.

No. 10858.

United States Court of Appeals
District of Columbia Circuit.

Argued Oct. 8, 1951.

Decided Jan. 10, 1952.

As Amended March 28, 1952.

Mark P. Friedlander, Washington, D. C., for appellant.

Robert T. Smith, Washington, D. C., for appellee. Charles L. Norris, Washington, D. C., also entered an appearance for appellee.

Before WILBUR K. MILLER, BAZELON, and FAHY, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

The plaintiff-appellee, Cost Christopher, was the owner of a parcel of ground divided into three lots, designated by the street numbers 3118–20–22 Georgia Avenue, N. W. There was a business house on the lot numbered 3118. The other two lots were unimproved and vacant. By a lease dated June 3, 1949, Christopher leased to the defendant-appellant, Jacob Shapiro, "Building located at 3118 Georgia Ave. N.W. Washington, District of Columbia with space in rear of same to park Six (6) trucks." The term was fixed at five years from July 1, 1949.

Beginning on August 1, 1949, Shapiro stored merchandise on the two vacant lots, Nos. 3120–22, although he had no lease therefor and paid nothing for the privilege. On April 20, 1950, Christopher sued Shapiro in the Municipal Court for the District of Columbia for possession of the two vacant lots and for the sum of $1,125 as rent therefor from August 1, 1949, to May 1, 1950, notice to quit on May 1 having been previously given. The complaint described Shapiro as a tenant by suffurance, but also alleged that he held the premises "without right."

Shapiro answered, saying Christopher had given him permission to store merchandise on the two vacant lots with the understanding that a lease would be agreed upon, but that later Christopher had refused to execute a lease or create any sort of tenancy. He alleged Christopher had told him he must remove his merchandise when he, Christopher, was ready to build, but in the meantime "there would be no charge for merely leaving the merchandise in the fenced area." Shapiro's answer also stated he did not claim the right to possession of the two lots "except for the rear portion thereof consisting of 1200 square feet or sufficient space to park six trucks, as granted in the lease for 3118 Georgia Avenue, N. W., made on the 3rd day of June, 1949."

Thus the issues were these: (a) did the lease of June 3, 1949, which described the demised premises as "Building located at 3118 Georgia Ave. N.W. Washington, District of Columbia, with space in rear of same to park Six (6) trucks" give to Shapiro the right to occupy and use the rear portion of the two adjoining vacant lots consisting, as he said in his answer, "of 1200 square feet or sufficient space to park six trucks, as granted in the lease for 3118 Georgia Avenue, N.W."; (b) had Christopher given Shapiro the right to store merchandise in the fenced area of the vacant lots (presumably that portion in front of the part claimed for truck parking) without charge, or was Christopher entitled to compensation for that use and for the use of the rear portion of the vacant lots on which Shapiro had parked his trucks; and (c) if the latter, what sum was Christopher entitled to recover as compensation for Shapiro's use of the vacant lots?

The trial began on May 26, 1950, and was completed on May 29. Shapiro stated he would make no point of the fact that the suit was filed prior to the expiration of the thirty-day period fixed in the notice to quit. During the trial Christopher was permitted, without objection, to amend his complaint so as to claim the additional sum of $125 as rent for the month of May, 1950. The jury found Christopher entitled to possession of the two vacant lots, and assessed the rent due for the period from August 1, 1949, to May 31, 1950, at $437.50.

On June 1, 1950, Christopher accepted Shapiro's certified check for $438.50, being the amount fixed in the verdict plus $1 as costs. Having made this payment, Shapiro moved for judgment on the issue of possession, notwithstanding the verdict, and further moved that the claim for rent be dismissed because the amount fixed by the jury had been paid, with costs. Pursuant to this motion, the Municipal Court made the following entry on June 9, 1950: "The sum of $438.50 tendered by the defendant to the plaintiff on June 1, 1950, this cause dismissed without prejudice. Defendant's motion for judgment notwithstanding the verdict held moot."

Christopher appealed to the Municipal Court of Appeals, which reversed the order appealed from and instructed the Municipal Court to enter judgment in accordance with the verdict but also to enter a final stay of execution thereunder.[1] We granted Shapiro's petition for an appeal from the judgment of the Municipal Court of Appeals.

The appellant says the Municipal Court of Appeals erred in directing the entry of a judgment for possession even though it ordered a permanent stay thereof; that it should have affirmed the Municipal Court's order of dismissal. He bases that conten-

1. Christopher v. Shapiro, D.C.Mun.App.1950, 76 A.2d 781.

tion on the rule that, when a landlord gives notice to quit and later accepts rent for a new term or part thereof, he waives his right to demand possession under the notice.[2] Doubtless the Municipal Court was following that rule in dismissing without prejudice Christopher's claim for possession.

■ The rule applies only in cases where a notice to quit is a statutory prerequisite to the landlord's right to recover possession from his tenant, i. e., in cases involving tenancies from month to month, at will or by sufferance. 45 D.C.Code §§ 902, 903 and 904 (1940). Shapiro was none of these. With respect to the front portion of the vacant lots, he expressly disclaimed any sort of tenancy, saying he had stored merchandise there by permission but without any lease or agreement as to the payment of rent. As to the front portion of the lots he was, therefore, only a permissive occupant and a mere licensee. City of Owensboro v. Cumberland Telephone Co., 1913, 230 U.S. 58, 33 S.Ct. 988, 57 L.Ed. 1389; Hicks Brothers v. Swift Creek Mill Co., 1902, 133 Ala. 411, 31 So. 947, 57 L.R.A. 720; Eastman v. Piper, 1924, 68 Cal.App. 554, 229 P. 1002; Howes v. Barmon, 1905, 11 Idaho 64, 81 P. 48, 69 L.R.A. 568.

His only claim to possession of the rear portion of the vacant lots, where he parked his trucks, was his theory that the lease of the building on lot No. 3118 with space in the rear for parking trucks gave him the right to use similar space on the rear part of the two adjoining lots. The lease for No. 3118 did not in terms give him the right to park on Nos. 3120–22 and the jury decided it was not so intended by the parties. It follows that, as to the parking area at the rear of the vacant lots, Shapiro was a trespasser.

■ Moreover, had Shapiro been a tenant at will, by sufferance, or from month to month, and so entitled to receive a notice to quit, the rule of the Edwards and Byrne cases which he invokes would still have been inapplicable, because the sum of $437.50 fixed by the jury as the amount owing for the use and occupancy of the two lots for the period from August 1, 1949, through May 31, 1950, was past due when he paid it on June 1, 1950. This court pointed out in the Edwards and Byrne cases that a landlord's receipt of rent already in arrears merely obviates the necessity of entering judgment for that amount and in no way affects his right to judgment for possession. This was recognized by the Municipal Court of Appeals in the present case when it said in its opinion, 76 A.2d at page 782: "* * * The trial of the case commenced May 26, 1950, and the verdict was rendered May 29. At the time of the commencement of the action and rendition of verdict plaintiff had not been offered and had not accepted any rent running beyond the date of the expiration of the thirty days' notice to quit. It was only after verdict and on June 1, 1950, when rent (or a charge for use and occupancy for the month of May) was due, that the payment was offered and accepted."

So the Municipal Court of Appeals concluded that the Municipal Court erred in dismissing after verdict and prior to judgment. It held that the plaintiff was entitled to entry of judgment for possession in accordance with the verdict but that, since the amount found by the jury to be owing had been paid and accepted, the plaintiff was not entitled to execution. Accordingly the appellate court reversed and directed the Municipal Court to enter judgment for possession in favor of the plaintiff pursuant to the verdict, and then to enter a final stay of execution under the judgment so entered.

This action of the Municipal Court of Appeals was based, as its opinion shows, upon Sheets v. Selden, 1868, 7 Wall. 416, 74 U.S. 416, 19 L.Ed. 166, and Trans-Lux Radio City Corp. v. Service Parking Corp., D.C.Mun.App.1947, 54 A.2d 144. In the cited Trans-Lux case the Municipal Court of Appeals said, 54 A.2d at page 146: "At least since Sheets v. Selden, 7 Wall. [416, 74], U.S. 416, 19 L.Ed. 166 [1868], it has been the rule in this jurisdiction

2. Edwards v. Totten, 1919, 48 App.D.C. 416; Byrne v. Morrison, 1905, 25 App.D.C. 72.

that a court of law or equity may relieve a tenant from forfeiture of his lease for nonpayment of rent by permitting him before or after judgment, so long as he is in possession, i. e., before 'execution is executed,' to pay the rent due, with interest and costs. Upon this being done, a final stay of proceedings is ordered."

Later in the same opinion the court said, 54 A.2d at page 147: "* * * The ground for granting relief to the tenant is that the provision of the lease giving the landlord the right to repossess for nonpayment of rent is in substance merely security for payment of rent, and that upon payment of the arrears, interest and costs, the landlord has complete compensation and has no need to resort to his security."

■ This principle, aptly stated in the Trans-Lux case, applies only in a situation where a tenant under an unexpired lease fails to pay rent and his landlord sues for possession because of the default. In such circumstances, if the tenant pays the arrears with interest and costs, the lease is again in full vigor and he is entitled to retain possession for the remainder of the unexpired term.

■ But here there was no lease covering the vacant lots and the appellant did not hold them as a tenant, as we have shown. Consequently, there was no unexpired term to which Shapiro could be entitled when he paid the amount fixed by the jury, and the Trans-Lux rule, relied upon by the Municipal Court of Appeals, could not apply. That court correctly directed judgment for possession to be entered pursuant to the verdict, but erred in ordering it permanently stayed.

■ As it developed that the relation of landlord and tenant had not existed between Christopher and Shapiro, this action turned out to be one by a landowner to recover possession from one who held it without

right. But the pleadings of both parties show that Shapiro's original entry was lawful: by describing Shapiro as a tenant by sufferance, Christopher admitted his entry was lawful and, although Shapiro did not claim to be a tenant by sufferance or otherwise, he did claim to have entered by permission. Ejectment was the only remedy available to Christopher for the recovery of possession in the factual situation here. There is no other form of action for the recovery of the possession of real estate appropriate in the circumstances. The case cannot be said to have been under our forcible entry and detainer statute,[3] which expressly gives jurisdiction to the Municipal Court of suits for possession against one who (1) forcibly enters and detains real estate, or (2) unlawfully, but without force, enters and unlawfully and forcibly detains real estate, or (3) unlawfully detains possession after the expiration of his lease. (We are not here concerned with the other sorts of actions which are permitted under the forcible entry and detainer section, i. e., against a mortgagor or grantor in a deed or trust or a judgment debtor, who detains possession of real estate after it has been sold to satisfy his debt.)

Our statute does not define forcible entry and detainer, as do some state statutes, but merely enumerates, as we have done, the situations in which it may be invoked. Here, as Shapiro did not hold possession under any form of tenancy, this suit could be regarded as under § 11–735 only if he had (a) forcibly entered and detained the lots, or (b) unlawfully, but without force, entered and then unlawfully and forcibly detained them. An action cannot be maintained under either of those provisions unless the original entry was unlawful. Thurston v. Anderson, D.C.Mun.App.1944, 40 A.2d 342, 344, and cases there cited. It follows that, as Christopher was not Shapiro's landlord and was not in any of

---

3. 11 D.C.Code, § 735 (1940), which is in part as follows:

"Whenever any person shall forcibly enter and detain any real property, or shall unlawfully, but without force, enter and unlawfully and forcibly detain the same; or whenever, any tenant shall unlawfully detain possession of the property leased to him, after his tenancy therein has expired; * * *."

the special categories enumerated in § 11–735, the only way he could recover possession was by an action in ejectment.

We have not overlooked the fact that in the complaint, apparently prepared on a printed form, Christopher alleged the landlord-tenant relationship, claimed possession because of default in the payment of rent, and said a notice to quit had been served on Shapiro. But the complaint also alleged Christopher was entitled to possession, which Shapiro held without right although his entry had been lawful. Thus an action in ejectment was informally stated.[4] As we have noted, both parties pleaded lawful entry. Shapiro alleged he was not a tenant with respect to the front part of the vacant lots, and said in his answer he had already surrendered possession of that portion. But he claimed the right to hold the rear portion of the vacant lots (Nos. 3120–22) for a fixed term by virtue of his lease of the adjoining improved lot, No. 3118. Whether he had that right was the principal question submitted to the jury. Christopher's title was not challenged.

The only issue as to the right of possession which was raised and tried was whether the parties had intended the lease of lot No. 3118 to cover also the rear portion of lots Nos. 3120 and 3122. When the jury decided it was not so intended, Shapiro stood in the status of a trespasser as to the back part of the vacant lots. This is, therefore, as we have said, an action in ejectment by an owner of land to recover possession from one who had not been a tenant and who held possession without right, but who did not challenge the owner's title,—a fact which makes it necessary to consider whether the Municipal Court had jurisdiction.

Did it have power to enter, pursuant to the verdict, judgment awarding possession to the plaintiff, or should it have certified the case to the United States District Court as soon as it became apparent that the action was one in ejectment? This is an important question of local practice which has never been squarely determined.

Although there is no provision of the District Code which in terms confers exclusive jurisdiction in ejectment upon the United States District Court or denies jurisdiction thereof to the Municipal Court, nevertheless it is the opinion of some members of the local bar that the District Court has exclusive jurisdiction in ejectment; that the Municipal Court cannot, in any circumstances, entertain an action of that nature. That opinion is based upon this reasoning: (a) ejectment is an action to try title to real estate; (b) the Code, § 11–703, excepts from the Municipal Court's jurisdiction "cases involving title to real estate"; (c) therefore, the Municipal Court has no jurisdiction in ejectment.

If the first premise is sound, the conclusion is correct; for, unquestionably, if the plaintiff's title is necessarily in issue in every suit in ejectment, those suits are "cases involving title to real estate" and

4. Christopher was not concluded by his allegations concerning a tenancy by sufferance. If there was any doubt in the trial judge's mind as to the sufficiency of the complaint as one in ejectment (assuming, for the moment, that the court had jurisdiction—a question discussed later in this opinion), it was his duty to permit the plaintiff to amend, even after judgment, by withdrawing the allegations concerning a tenancy by sufferance and by clearly stating a cause of action in ejectment in conformity with the facts. It was the court's duty to grant the relief to which the pleadings, evidence and verdict, considered together, showed the plaintiff to be entitled. The Municipal Court's Rule 15(b) is in part as follows: "(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, *even after judgment; but failure so to amend does not affect the result of the trial of these issues.*" (Italics supplied.)
Rule 1 requires all other rules to be construed so as "to secure a just, speedy, and inexpensive determination of every action."

so are beyond the jurisdiction of the Municipal Court.

Accordingly, we examine the premise, and consider whether ejectment is necessarily and invariably an action to try title. In Staffan v. Zeust, 1897, 10 App.D.C. 260, 270–271, this court quoted Lord Mansfield's statement that

"* * * in truth and substance, a judgment in ejectment is a recovery of the *possession* (not of the seisin or freehold), without prejudice to the *right* as it may afterwards appear, even between the parties * * *."

and the court added, "It would seem to be clear, that an action in ejectment in this District is a possessory action * * *."

The Supreme Court said in Cincinnati v. White, 1832, 31 U.S. 431, 441–442, 6 Pet. 431, 441–442, 8 L.Ed. 452, "This [ejectment] is a possessory action, and the plaintiff, to entitle himself to recover, must have the right of possession; * * *." And again the Court said, "The purpose for which the action is brought, is not to try the mere abstract right to the soil, but to obtain actual possession; * * *."

In Gregg v. Von Phul, 1863, 1 Wall. 274, 282, 68 U.S. 274, 282, 17 L.Ed. 536, the Court said: "This action is a possessory one, and it settles nothing but the right of possession. The equities between the parties must be determined in another proceeding." See also Dickerson v. Colgrove, 1879, 100 U.S. 578, 25 L.Ed. 618, and cases cited under 28 C.J.S., Ejectment, § 1, p. 848, and Ejectment, § 2, 18 Am.Jur. 7.

■ It therefore seems well established that ejectment is essentially a possessory action. Certainly it may, and frequently does, become the means of trying title, because the plaintiff must have the possessory title[5]—the right of entry upon the land—and, as so frequently said, must recover on the strength of his own title and not on the weakness of the defendant's. The reason that this action to recover possession often involves trial of title is that the defendant usually pleads the general issue of

"not guilty" (now the general denial permitted by Rule 8(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A.), which of course puts the plaintiff to proof on his allegation of possessory title. But the defendant is not required to plead the general issue; when he does not do so, and does not otherwise deny the plaintiff's title, then title is not in issue and the plaintiff need not bring proof to support his allegation—it being conceded.

This patent fact was stated by Warvelle on Ejectment, § 202, p. 210 (1905): "In every event, however, there must be some form of denial of the plaintiff's right; in other words, there must be an issue presented to the trial court, and where the answer does not put the plaintiff's title in issue, it is unnecessary, if not useless, for him to introduce any evidence concerning it * * *."

■ We conclude that ejectment is an action to recover possession of real estate, in which the plaintiff's title may or may not become an issue; that it is not automatically in issue, and is not in issue at all unless the defendant challenges it.

The erroneous theory that in the District of Columbia ejectment is primarily and necessarily an action to try title probably arises from the fact that at common law the defendant usually pleaded the general issue which denied the plaintiff's title, and from the fact that an Act of March 3, 1901, which was a code of law for the District of Columbia, provided, in its chapter on Ejectment, 31 Stat. 1347, § 987; "* * * The defendant may demur or may plead the general issue of 'not guilty,' *which shall put in issue the plaintiff's title and right to the possession* * * *." (Italics supplied.)

Contrary to the common law, this section *required* the issue of title to be raised in every action in ejectment, with the result that the predecessor of the Municipal Court had no jurisdiction. But the quoted section was repealed by an Act of June 30, 1902, 32 Stat. 537, and since that time there

5. Bradshaw v. Ashley, 1901, 180 U.S. 59, 21 S.Ct. 297, 45 L.Ed. 423, in which the Supreme Court cited and quoted from

Staffan v. Zeust, 1897, 10 App.D.C. 260; Dickerson v. Colgrove, 1879, 100 U.S. 578, 25 L.Ed. 618.

has been no statutory requirement that title be an issue in ejectment. From this it follows that the plaintiff's title is not necessarily in issue in the possessory action of ejectment. It may be made an issue by the defendant's general denial under Rule 8(b) of the Federal Rules of Civil Procedure, or by an express denial of the plaintiff's allegation of title.

Despite all this, proponents of the theory that ejectment is invariably a trial of title point to Brown v. Slater, 1904, 23 App.D.C. 51, 58, where this court said: " * * * Whatever the latter [ejectment] may have been in its origin, its purpose in our country and in our American jurisprudence has always been primarily to determine the question of title, and only secondarily, and as a corollary to the other, the question of the right of possession."

We regard the quoted statement, for which no authority was cited, as incorrect. Just the reverse is true.

The court should have said the purpose of ejectment at common law has always been primarily to determine the question of the right to possession, and secondarily the question of title, if that question be raised so as to make the right to possession depend upon it; and that the same has been true in the District of Columbia since June 30, 1902, when the mandatory requirement that title be an issue was repealed.

We reach the question whether, in the possessory action of ejectment, when the plaintiff's title is not put in issue and the only question is as to the right to possession, jurisdiction is withheld from the Municipal Court by the provision of the Code which denies it jurisdiction in "cases involving title to real estate". We have held the quoted expression to be identical in meaning with the phrase "cases where the title to real estate is in issue".[6] Thus it is seen that the question whether the Municipal Court has jurisdiction in a case like the present one is really this: is the court denied jurisdiction in an ejectment proceeding, where the plaintiff's title is *not* in issue, by a provision of the Code which withholds jurisdiction from the court in "cases where the title to real estate is in issue". Thus stated, the question answers itself in the negative.

It may nevertheless be suggested that, since the plaintiff in ejectment usually must allege title in himself, and must recover on the strength of his own title instead of the weakness of that of the defendant, the court's decree necessarily adjudges the question of title, regardless of the fact that it was not actually put in issue;[7] that therefore in such a case the Municipal Court's jurisdiction is barred by the Code section which forbids it to entertain "cases involving title to real estate", that is to say, "cases where the title to real estate is in issue".

The answer to such a suggestion is found in Schwartz v. Murphy, 1940, 72 App.D.C. 103, 112 F.2d 24. There Judge Stephens, the present Chief Judge of this court, carefully summarized the history of the jurisdiction of the Municipal Court and concluded that, where there is no actual dispute as to title, Congress did not intend the phrase "except in cases involving title to real estate" as a limitation on the jurisdiction of

---

6. Schwartz v. Murphy, 1940, 72 App.D.C. 103, 112 F.2d 24, 26.

7. Proponents of the theory of non-jurisdiction in the Municipal Court point, in this connection, to § 16–518 of the Code, which is as follows: "Any final judgment rendered in an action of ejectment shall be conclusive as to the title thereby established as between the parties to the action and all persons claiming under them since the commencement of the action."
This section was enacted to abrogate the doctrine of the common law as to the inconclusiveness of a judgment of ejectment, Lyon v. Bursey, 1911, 36 App.D.C. 235, and obviously was not intended to change the remedy of ejectment from one well defined as possessory in character to one in which title is automatically in issue. Moreover, when the plaintiff's allegation of title is not denied, but rather conceded, by the defendant and accordingly title is adjudged by the court to be in the plaintiff, it by no means follows that the question of title has been a necessary and direct issue in the case.

the Municipal Court. As we have already noted, he pointed out from a study of the statutes that Congress used the two phrases, "cases involving title to real estate" and "cases where the title to real estate is in issue", as identical in meaning. "Historically," Judge Stephens said, 72 App.D.C. at page 107, 112 F.2d at page 28, "the essential reason for excluding from the jurisdiction of the justice of the peace cases concerning real estate was that the justice of the peace was not learned in the law, and was not, therefore, competent to deal with questions of title often of difficult and intricate nature. * * * Also, the court of the justice of the peace was not a court of record. Neither of these reasons for limiting jurisdiction prevails in the District of Columbia."

His conclusion was that the legislative history of the local statutes, the decisions in Maryland and other states, and the passing away of the historical reasons for excluding actions concerning real estate from the jurisdiction of the Municipal Court, are persuasive that the local statutes should be construed as not intended to exclude 'from the jurisdiction of that court a case where there is no issue as to title to real estate.

We therefore hold that the Municipal Court has jurisdiction in ejectment cases where the title to real estate is not in issue, and that the plaintiff's title is not so in issue if it is expressly conceded or not denied.

To hold otherwise would place the Municipal Court in the rather peculiar position of having jurisdiction in all cases involving the right to possession of real estate except those actions in ejectment which involve only the right to possession, title not being in issue. By express provision of the Code the Municipal Court has jurisdiction of suits to recover possession, such as forcible entry and detainer, and cases between landlord and tenant after the tenancy has expired, as well as proceedings to obtain possession from a mortgagor who unlawfully retains possession after a sale under foreclosure.[8] The jurisdiction of the Municipal Court is also extended to cases of trespass upon or injury to real estate.[9]

Yet in each of these proceedings (except, of course, in landlord and tenant cases) Congress recognized that the question of the plaintiff's title might arise, just as it may arise in ejectment. So, it is provided that, if a defendant in forcible detainer raises an issue as to the plaintiff's title, the Municipal Court must certify the proceedings to the United States District Court,[10] and, if the plaintiff's title be questioned in a case of trespass upon or injury to real estate, "the court shall take no further cognizance of the case." In like manner, whenever it becomes apparent in an action of ejectment in the Municipal Court that the plaintiff's title must be tried and determined, then the court should take no further cognizance of the cause, but should stop short, just as the provisions of the Code above cited direct it to do when the plaintiff's title is challenged in actions of forcible detainer and in actions of trespass upon or injury to real estate. There is no reason to suppose that Congress intended to give the Municipal Court jurisdiction to adjudge the right to possession of real estate in all cases where title is not in issue, except in ejectment cases where it is not in issue.

We observe that the Municipal Court of Appeals has said the Municipal Court has the general jurisdiction to which we refer: " * * * * The Municipal Court has jurisdiction to try actions involving possession of real estate. Code 1940, § 11–735. Nor is a plaintiff required to join his claim for rent with his possessory action. And his failure so to join his rent claim does not prevent him from suing separately to recover the rent. Code 1940, § 16–513. That section of the Code provides a summary method of obtaining possession of real property and is a statutory proceeding substituted for the ancient remedy of ejectment." [11]

---

8. 11 D.C.Code, § 735 and 45 D.C.Code, § 910 (1940).

9. 11 D.C.Code, § 704 (1940).

10. 11 D.C.Code, § 738 (1940).

11. Service Parking Corp. v. Trans-Lux Radio City Corp., 1946, D.C.Mun.App., 47 A.2d 400, 403. It is interesting to note that § 16–513 is a part of the chapter on Ejectment.

We agree that the Municipal Court has jurisdiction to try all actions involving the right to possession of real estate, except we should add to that statement these words: "except where title is in issue." This qualification is necessary to give effect to the Code provision which excludes from the Municipal Court's jurisdiction "cases where the title to real estate is in issue" ("cases involving title to real estate").

One more point made by the proponents of the theory that the Municipal Court never has jurisdiction in ejectment remains to be noticed. They refer to § 45–910 of the D.C.Code, which is as follows: "Whenever a lease for any definite term shall expire, or any tenancy shall be terminated by notice as aforesaid, and the tenant shall fail or refuse to surrender possession of the leased premises, the landlord may bring an action of ejectment to recover possession in the District Court of the United States for the District of Columbia; or the landlord may bring an action to recover possession before the municipal court, as provided in sections 11–701 to 11–749 of this Code."

The proponents suggest that by this section Congress gave to the District Court exclusive jurisdiction in ejectment, and to the Municipal Court exclusive jurisdiction in forcible entry and detainer, and thereby excluded the action of ejectment from the jurisdiction of the Municipal Court.

We reject the suggestion for this reason: § 45–910 is a part of the Act of March 3, 1901, the general code of law for the District to which we have already referred, and appears in 31 Stat. 1382 as § 1225. The same Act provided the predecessor of the Municipal Court should not have jurisdiction of "cases involving the title to real estate" 31 Stat. 1191, § 9; and the same Act also contained the requirement heretofore noted that the defendant plead the general issue "which shall put in issue the plaintiff's title". 31 Stat. 1347, § 987.

So, in the Act of 1901, Congress provided that title should automatically be in issue in every action of ejectment, and provided further that questions of title to real estate could not be tried by the Municipal Court. The combined effect of those two enactments clearly excluded ejectment from the

jurisdiction of the Municipal Court. It was therefore consistent and proper for Congress to say, in enacting at the same time what is now § 45–910, that a landlord seeking possession at the expiration of a tenancy might choose between suing in ejectment in the District Court or in forcible detainer in the Municipal Court's predecessor. The effect was to give the two courts concurrent jurisdiction in the case described, but consistency then required that the action not be referred to as "ejectment" except in the District Court, which at that time had exclusive jurisdiction of that form of action; but the District Court's exclusive jurisdiction sprang, not from § 45–910, but from the joint effect of the other two sections of the Act of 1901 to which we have just referred, which denied jurisdiction in ejectment to the Municipal Court.

We have seen that on June 30, 1902, the section of the 1901 Act which made title an issue in every ejectment action was repealed; with it went the necessity that § 45–910 differentiate between the two courts as to the name of the action a landlord might bring to obtain possession upon termination of a tenancy. The reason for the differentiation no longer exists.

In the present case Shapiro did not raise an issue as to Christopher's title. On the contrary, he claimed the right of possession under a lease from Christopher, which estopped him to deny the latter's title. Chavez v. Bergere, 1913, 231 U.S. 482, 490, 34 S.Ct. 144, 58 L.Ed. 325; Robertson v. Pickrell, 1883, 109 U.S. 608, 614, 3 S.Ct. 407, 27 L.Ed. 1049. There was, therefore, no issue whatever concerning Christopher's title and the only question was whether he was entitled to recover possession. We are clear that the Municipal Court had jurisdiction.

The judgment of the Municipal Court of Appeals is affirmed insofar as it directed the entry of a judgment for possession pursuant to the verdict, but that portion of it which directed a permanent or any stay of execution under the judgment for possession is reversed. The cause will be remanded to the Municipal Court of Appeals to be remanded in turn to the Municipal Court with directions to

set aside its order dismissing without prejudice and to enter a judgment awarding possession of the two vacant lots to Christopher. A writ of restitution may issue immediately under that judgment. The Municipal Court should also enter judgment against Shapiro for $437.50 for the use and occupancy of the lots, pursuant to the jury's verdict, after which it should be noted of record that the judgment debt was paid on June 1, 1950.

Affirmed in part, reversed in part and remanded for further proceedings consistent herewith.